## S97A0236. WILLIAMS v. WILLIAMS.
### (485 SE2d 772)

THOMPSON, Justice.

This case is before the court pursuant to the grant of an application for discretionary appeal in an action for modification of alimony and child support. We inquired whether a change in the financial condition of the provider, which arises from an increase in the value of an asset allocated in a property settlement, may be a change warranting modification of alimony and child support obligations. We answer in the negative and affirm the judgment of the trial court.

Sue Z. Williams and Sam A. Williams were divorced in October 1994. During the marriage, husband acquired minority interests in more than 15 limited partnerships and subchapter-S corporations through his employment with the Portman Companies. In the divorce proceedings, he retained the accounting firm of Arthur Anderson to prepare a financial report regarding the value of the partnership interests. Wife obtained independent financial and tax advice from the firm of Ernst & Young, and an individual certified public accountant, and these experts were permitted access to the financial data regarding husband's partnership interests, to his accountants, and to the Arthur Anderson financial report. Husband represented that due to lack of marketability, uncertainty of future distributions, and recapture of tax liabilities effective on various events of transfer of the interests, the value of the partnership interests after liabilities and offsets was "basically a wash."

After extensive negotiations, the parties entered into a settlement agreement allocating various assets between them and obligating husband for alimony and child support. As part of that agreement wife relinquished any interest in the partnership interests and instead settled for a division of other marital assets; husband received 100 percent of the Portman interests as part of the marital estate. The settlement agreement was incorporated in the final judgment and decree, both of which were placed under seal by order of

the trial court.[1]

Eight months after the divorce, husband filed suit in federal court against the Portman Companies seeking $9.5 million in compensatory and punitive damages for alleged attempts to interfere with his partnership interests. The parties in that litigation entered into a confidential settlement agreement that was placed under seal pursuant to federal court order.

Wife then filed the present petition for upward modification of alimony and child support, asserting that the terms of the divorce settlement "are no longer an equitable division of assets acquired in the marriage." Her claim for modification was based on the sole contention that the Portman settlement resulted in a substantial change in husband's financial status or condition. Wife subsequently filed various discovery motions, including a motion to compel discovery of the sealed federal documents. After a hearing, the trial court granted husband's motion for summary judgment on the modification action, and dismissed wife's pending discovery motions as moot.

OCGA § 19-6-19 provides that permanent alimony for the support of a spouse or child in a divorce decree may be modified upon a showing of a "change in the income and financial status of either former spouse." Though the statute is phrased in the conjunctive, this Court has historically interpreted the statute to require only a change in the payor spouse's "ability to pay," which may result from a change in income *or* financial status. *Perry v. Perry*, 213 Ga. 847 (3) (102 SE2d 534) (1958); *Miller v. Tashie*, 265 Ga. 147, 149, fn. 2 (454 SE2d 498) (1995). But alimony and equitable property division are not synonymous, and "the definition of permanent alimony within OCGA Ch. 19-6 is not sufficiently broad to include the revision or modification of awards of equitable division of property within the scope of OCGA § 19-6-19." *Holler v. Holler*, 257 Ga. 27, 28 (354 SE2d 140) (1987).

> [The statutory law] in OCGA §§ 19-6-18 through 19-6-27 [provides] the "exclusive method by which the alimony provisions of a divorce decree may be revised and modified." [Cit.] . . . However, not all provisions in a divorce decree may be modified through the statutory procedure. [Cit.] Fixed allocations of economic resources between spouses, those that are already vested or perfected, are not subject to modification by the court. . . .

---

[1] Because these documents were sealed, they are not contained in the record now before this Court. However, the parties are generally in agreement as to the terms as set out herein.

*Spivey v. McClellan*, 259 Ga. 181, 181-182 (378 SE2d 123) (1989). See also *Douglas v. Cook*, 266 Ga. 644 (2) (469 SE2d 656) (1996); *Holler*, supra.

Recognizing that OCGA § 19-6-19 does not provide authority for the modification of judgments for equitable division of property, *Douglas*, supra; *Holler*, supra, wife asserts that she is nevertheless entitled to an upward modification of alimony and child support under OCGA § 19-6-19 based on a change in husband's financial status that resulted from an increase in value of an asset allocated in the property settlement. This argument is flawed.

In arriving at the terms of the property settlement, the parties were given full opportunity to vigorously contest the value of the marital assets, and to arrive at a mutually satisfactory negotiated settlement agreement. Each had the benefit of counsel as well as extensive business and financial advice. The parties agreed, after full disclosure, that husband would accept the full risk of gain or loss associated with the partnership interests. Though valuation was difficult then, and any future value was clearly uncertain, neither party was prevented from providing for the future contingency that a radical increase or decrease in liquidation value might occur. On the contrary, any potential benefit from liquidation of these assets was bargained away during the property settlement. By agreement of the parties, husband was unequivocally awarded the partnership interests (along with any future gain or loss in their value) as property in the dissolution decree.

Conversion of an asset awarded in the dissolution decree will not be considered income for the purpose of assessing whether there has been a change in the financial status of the obligor spouse. To allow modification of husband's support obligations on this basis would permit re-litigation of matters already settled, and would allow wife to obtain indirectly that which is directly prohibited by the current state of our law. *Spivey*, supra; *Holler*, supra. Other jurisdictions have reached similar conclusions. See, e.g., *Denley v. Denley*, 661 A2d 628 (Conn. App. 1995) (husband's exercise of divorce allocated stock options at a profit was not a change in financial circumstances to be considered in modification action); *Innes v. Innes*, 569 A2d 770 (N.J. 1990) (annuity payments purchased with divorce allocated assets excluded for purposes of alimony modification); *Flach v. Flach*, 606 A2d 1153 (N.J. Super. 1992) (assets equitably distributed in divorce, and all assets acquired with equitably distributed assets, when repaid, not deemed income for purposes of modification); *In re Marriage of Norvall*, 237 Cal. Rptr. 770 (Cal. App. 1987) (divorce allocated community property settlement excluded); *Beltz v. Beltz*, 466 NW2d 765 (Minn. App. 1991) (promissory note awarded in divorce settlement not considered as earnings in modification action); *In re*

*Marriage of Case*, 879 P2d 632 (4) (Kan. App. 1994) (proceeds from sale of divorce allocated asset excluded).

Finality in law is well served by this Court's established policy that a fixed allocation of a property right that is already vested or perfected is not subject to modification. See *Spivey*, supra; *Holler*, supra. And an unexpected increase in the value of a risky asset is insufficient grounds to upset the policy disfavoring modification of fixed allocations of economic resources distributed in a property settlement. Id. Therefore, we hold that an increase in value of an asset allocated in a property settlement is not a change in financial status warranting modification of alimony or child support under OCGA § 19-6-19.[2] In so holding, we do not exclude from consideration in modification actions any future *income* generated from economic resources distributed in the property settlement, as such may bear on the obligor's ability to pay. *Perry*, supra.

Since wife's claim is based solely on an alleged increase in an asset allocated in the divorce, and she alleges no other change in husband's financial status, her modification claim must fail as a matter of law.

*Judgment affirmed. All the Justices concur, except Sears, Hunstein and Carley, JJ., who dissent.*

HUNSTEIN, Justice, dissenting.

Mr. Williams, in the course of his employment as an executive in companies controlled by John Portman, Jr., obtained interests in over a dozen limited partnerships (hereinafter the "Portman interests"). In the equitable division of the Williamses' marital property, Mr. Williams received all the Portman interests allegedly based on the understanding of the parties that these interests were essentially valueless. Less than a year after the divorce, Mr. Williams filed a lawsuit regarding the Portman interests, which led to a settlement and the apparent liquidation of his Portman interests. Thereafter, Ms. Williams petitioned the trial court for an upward modification of her former spouse's alimony obligation, claiming that Mr. Williams sustained a significant increase in his financial status as a result of the settlement. The evidentiary basis for Ms. Williams' claim was never litigated, however, because the trial court found as a matter of law that Ms. Williams was "not entitled to any interest in the Portman [companies] nor to the proceeds derived from its liquidation" and thus granted Mr. Williams' motion for summary judgment.

---

[2] While fraud may be a basis for setting aside the separation agreement, wife did not assert a claim for fraud in the modification action; she instead specifically based her claim on the absence of fraud. We thus agree with the trial court's refusal to consider wife's claim that husband fraudulently misrepresented the value of the partnership interests.

130

I dissent to the majority's affirmance of the trial court's ruling.

Nothing in Georgia statutory or case law bars a party as a matter of law from seeking the modification of a former spouse's obligations for alimony and/or child support based upon a claim that there has been a change in the former spouse's income or financial status due to post-divorce appreciation in the value of property awarded the former spouse as a marital asset in the equitable division of the couple's property. Modification actions are governed by OCGA § 19-6-19 (a). This Court has interpreted OCGA § 19-6-19 (a) to provide that alimony or child support obligations may be subject to modification upon a showing of a change in the income or financial status of either former spouse.[3] See *Perry v. Perry*, 213 Ga. 847, 852 (102 SE2d 534) (1958). The plain and unambiguous language of OCGA § 19-6-19 (a) focuses upon a change in income or financial status, not upon the source of that change. Nothing in the statute either expressly or implicitly exempts from a modification action those changes in income or financial status resulting from post-divorce appreciation in marital assets awarded one spouse in the equitable division of property. Nor does anything in the statute support the distinction drawn by the majority between modification actions based on changes in income derived from marital assets, as opposed to those based on changes in financial status as a result of appreciation or depreciation of a marital asset. It thus appears that the majority's opinion imposes an unwarranted marital-asset exemption upon a modification proceeding under OCGA § 19-6-19 (a). Under the majority's rationale, one spouse may be awarded a marital asset which, post-divorce, skyrockets in value, making that spouse extremely wealthy, yet that change in financial status cannot be considered in *any* modification action, including child support actions. Because it makes no difference under the majority's rationale which spouse, payor or payee of alimony, owned the asset, it follows that no modification action can be based on an increase in the financial status of the alimony recipient or the child's custodian. Finally, the majority's opinion is not limited to situations where a marital asset has increased in value: its rationale will likewise bar modification actions by parties whose financial status has been adversely affected by a depreciation in the value of an equitably distributed marital asset.

The majority's position also is not supported by the two Georgia cases it references. Those cases either involve actions to change the terms and conditions under which a spouse was awarded a share of the marital property[4] or else recognize that marital property that has

[3] Modification in child support may also be based upon a showing of a change in the needs of the child or children. OCGA § 19-6-19 (a).

[4] *Holler v. Holler*, 257 Ga. 27 (354 SE2d 140) (1987) (husband awarded all military

been awarded is subject to disposal by the parties in any manner they so choose.[5] Those cases are not applicable here since Ms. Williams does not question Mr. Williams' ownership of 100 percent of the Portman interests[6] and is not seeking to alter the manner in which the parties disposed of the Portman interests, i.e., she does not claim she is now entitled to a proprietary interest therein. Nor is this an instance in which a spouse has merely exchanged an asset awarded as property in the divorce decree for another asset or the liquid form of the asset, i.e., cash. The majority states that the Portman interests were essentially valueless at the time of the divorce; hence, had this marital asset's value remained unaltered, a mere liquidation of this asset could not have changed Mr. Williams' income or financial status. The foreign cases cited by the majority, rather than supporting its holding, instead support the conclusion that Ms. Williams should be entitled to seek a modification of her former spouse's alimony obligation based on the significant increase in Mr. Williams' financial status because that increase allegedly is due to the post-divorce appreciation of the liquidated Portman interests. See *Beltz v. Beltz*, 466 NW2d 765 (Minn. App. 1991) (promissory note for $50,000 split 60/40 between husband and wife; husband's portion of principal of note could not be considered in determining change for modification action but interest on note could be considered as increase in husband's earnings); *Flach v. Flach*, 606 A2d 1153 (N.J. Super. 1992) (all previously equitably distributed assets and all assets acquired with, by or through equitably distributed assets, when repaid, are not considered income for purpose of determining alimony, but all income generated by that principal is to be considered); *Innes v. Innes*, 569 A2d 770 (N.J. 1990) (items purchased with proceeds of equitable distribution award are not income for modification action "to the extent that [the assets] reflect return of the principal as opposed to income

---

retirement benefits in divorce because those benefits not subject to property division under Federal law at that time; when Federal law changed, wife sought an equitable division of those benefits. Held: Absent statutory basis to authorize modification of property distribution provisions of divorce decree, wife could not recover).

[5] *Spivey v. McClellan*, 259 Ga. 181 (378 SE2d 123) (1989) (marital residence was to be sold in two years and proceeds equally divided; parties did not follow divorce terms and entered into contract leasing house to husband, who thereafter refused to pay rent claiming contract was void. Held: fixed property rights that are vested or perfected are not subject to modification by the court and thus may be modified by the parties). The majority also cites, as a "see also," to *Douglas v. Cook*, 266 Ga. 644 (469 SE2d 656) (1996), a case involving a mutual mistake regarding the terms in which a marital asset was to be dispersed.

[6] Although Ms. Williams stated in her complaint that the divorce settlement's division of the marital assets was no longer equitable, even the majority acknowledges that her modification claim was based on the "sole contention" that there had been a change in Mr. Williams' financial status. Majority opinion, p. 127. Her complaint raised no claim for assets awarded Mr. Williams and did not expressly seek redistribution of marital assets.

generated by the principal").[7] See also *Hommel v. Hommel*, 471 NW2d 1, 5 (Wis. 1991) (investment income from assets awarded to spouse as part of equal division of property pursuant to divorce settlement generally can be included in calculating that spouse's income for purposes of revising a maintenance award to payee spouse).

The majority's holding is not mandated by OCGA § 19-6-19 (a) and is not supported by the cases cited as authority. Although the majority claims its holding promotes finality, it does so by working an injustice to all parties affected by a post-divorce increase or a decrease in income or financial status where the source for the change is a marital asset. Because I would hold that Ms. Williams is not barred as a matter of law from filing a modification action, where the burden will be on her to show that the liquidation of the Portman interests resulted in a change in Mr. Williams' income or financial status, I respectfully dissent.

I am authorized to state that Justice Sears and Justice Carley join in this dissent.

DECIDED JUNE 2, 1997 —
RECONSIDERATION DENIED JUNE 30, 1997.

*Mayer & Beal, Randolph A. Mayer*, for appellant.
*Warner, Mayoue & Bates, John C. Mayoue*, for appellee.

---

[7] The remaining foreign cases cited by the majority are distinguishable or unpersuasive for the following reasons: the holding in *Denley v. Denley*, 661 A2d 628 (Conn. App. 1995) relied entirely upon a case the holding in which was based on statutory law requiring modification only upon a showing of a substantial change in circumstances that "must not have been contemplated by the parties" at the time the decree was entered, *Simms v. Simms*, 593 A2d 161, 163 (Conn. App. 1991); *Denley v. Denley* also failed to address other Connecticut case law arriving at a position consistent with this dissent, see *O'Bymachow v. O'Bymachow*, 529 A2d 747 (Conn. App. 1987) (trial court should have considered as a substantial change warranting modification the fact that defendant spouse's business, valued at zero at time of divorce, was worth $202,000 at time of modification action). In *In re Marriage of Case*, 879 P2d 632 (Kan. App. 1994) the appellate court found that the parties had bargained away in the property settlement the effect of any potential money received from the sale of a divorce-allocated asset; the only legal discussion addressed the general rule that a marital asset changed into its liquid form usually will not be considered as income. *In re Marriage of Norvall*, 237 Cal. Rptr. 770 (1987) relied on an earlier case wherein it was deemed "unreasonable" to expect payee spouse to sell her home in order to provide liquid assets to offset a requested reduction in spousal support owed by payor spouse where payee spouse was not able to work or support herself and that without income she might be required to use her assets which, when depleted, would leave her without any means of support. *In re Marriage of Kuppinger*, 120 Cal. Rptr. 654 (Cal. App. 1975).