## S06A0388. JONES v. JONES.
### (632 SE2d 121)

HUNSTEIN, Presiding Justice.

This appeal involves the interpretation of a provision of a settlement agreement, incorporated into the divorce decree, providing for waiver of downward modification of alimony in the form of child support below a pre-determined "floor amount." For the reasons set forth below we reverse the ruling by the trial court declaring that provision void.

Appellant Kimbro H. Jones and appellee Lee Jones divorced in August 2000. The settlement agreement provided in pertinent part that appellant would have primary physical custody of the couple's two children and that appellee would pay her $1,657.86 a month as "permanent child support." The agreement recognized that this amount represented 28 percent of appellee's gross monthly wages at that time and provided in Paragraph 7 that "[i]n the event that [appellee] shall earn more in wages, then said child support shall be 28% of his increased gross wages earned, but in no event shall said child support be less than the $1657.86 per month." Thus, appellee agreed to pay $1,657.86 or 28 percent of his gross income, whichever was greater. Paragraph 17 of the agreement then provided for the waiver of appellee's right to seek downward modification of his support obligation. In so providing, the parties incorporated verbatim the waiver language set forth by this Court in *Varn v. Varn*, 242 Ga. 309 (248 SE2d 667) (1978), namely, that the parties agreed to "hereby

waive their statutory right to future modifications, up or down, of the alimony payments provided for herein. . . ." Under *Varn*, use of this language "will be deemed to comply" with the requirement that "the right to modification will be waived by agreement of the parties only in very clear waiver language which refers to the right of modification." Id. at 311 (1). The trial court thereafter incorporated the settlement agreement into the divorce decree.[1]

In October 2002 appellee petitioned for modification of his child support obligation and in October 2004, after hearing evidence on the issues raised, the trial court rejected appellee's challenge to the "floor amount" provision, recognizing that "[t]he law provides you can agree to pay more than the guidelines," and specifically finding that "[t]here is no evidence of fraud, mutual mistake, overbearing or any other legal defense to that contract. It was a settlement contract with many issues that could affect the agreement, including property division, potential alimony, etc.; therefore, the contract stands as enforceable, so the floor or minimum amount stands." The trial court thus required appellee to pay child support in the amount of 28 percent of his then-salary of $93,500.

However, within the same term of court, appellee lost his job and moved for reconsideration of the October 2004 ruling.[2] A hearing was held on appellee's motion in April 2005; according to the narrative transcript prepared by the parties,[3] appellee testified at the hearing that he had obtained a new job that paid him $60,000 per annum and "[n]o other evidence was forthcoming which related to [appellee's] earnings and the drop in those earnings from the amount he earned prior to the termination of his employment in 2004 until he began working [his current job]."

The trial court thereafter entered the order that is the subject of this appeal. Based on the fluctuation of appellee's income, the trial court imputed to appellee a yearly income of $75,000. Although this amount was $4,000 more than appellee's income at the time of the original divorce decree, the trial court declined to calculate child support under the 28 percent figure set forth in Paragraph 7. Despite

---

[1] The trial court properly conducted its own assessment of the parties' agreement regarding the sufficiency of the child support obligation under the Child Support Guidelines, OCGA § 19-6-15. See *Swanson v. Swanson*, 276 Ga. 566 (1) (580 SE2d 526) (2003).

[2] Appellant also sought reconsideration, based upon her remarriage, so as to change appellee's holiday visitation schedule to accommodate the visitation schedules of her stepchildren.

[3] Although the court reporter took handwritten stenographic notes of the hearing, she was subsequently unable due to physical problems to transcribe her notes; no one else was able to decipher them; and the backup tape that recorded the proceedings was too faint to transcribe. Accordingly, pursuant to OCGA § 5-6-41 (d) the parties agreed upon a narrative transcript of the proceedings.

the lack of any evidence adduced at the April 2005 hearing to support a finding contrary to that made by the court in October 2004, the trial court determined that "a special circumstance of the requirements of justice and fairness necessitate a modification" of its prior order and declared "void" the floor amount provision in the settlement agreement. The trial court then awarded 25 percent of appellee's imputed income ($1,562.50 per month) as child support, which was $95.16 less per month than the floor amount to which the parties had agreed. This Court granted appellant's application for discretionary appeal to address the propriety of the trial court's ruling.

1. "The statutory right to seek revision of periodic child support payments belongs to the minor child and not to the custodial parent; therefore, the custodial parent cannot waive, and the parents cannot bargain away the child's right to seek *increases* in child support payments. [Cit.]" *Nelson v. Mixon*, 265 Ga. 441-442 (1) (457 SE2d 669) (1995). "[W]hile [a] child's right to seek *increases* in the amount of alimony to be paid for child support may not be waived, an obligated parent may waive the right to seek a *downward* modification of such alimony. [Cits.]" Id. at 444 (Carley, J., dissenting). Although a parent cannot be forced to forfeit the right to seek a downward modification of child support, a parent is free to contract for such a provision, albeit the provision must be cast in "very clear waiver language which refers to the right of modification." *Varn*, supra, 242 Ga. at 311 (1).

"Settlement agreements in divorce cases must be construed in the same manner and under the same rules as all other contractual agreements." (Footnote omitted.) *Schwartz v. Schwartz*, 275 Ga. 107, 108 (1) (561 SE2d 96) (2002). "It is general contract law in Georgia that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears." *Rivergate Corp. v. McIntosh*, 205 Ga. App. 189, 192 (421 SE2d 737) (1992). While parties are free to execute settlement agreements for the purpose of resolving matters arising out of a divorce, it is within the trial court's discretion to decide whether to approve such an agreement in whole or in part, or refuse to approve it as a whole. *Guthrie v. Guthrie*, 277 Ga. 700, 701 (1) (594 SE2d 356) (2004). In making this determination, the trial court employs the three criteria set forth in *Allen v. Allen*, 260 Ga. 777 (2) (400 SE2d 15) (1991), and its decision thereafter to incorporate the settlement agreement into the divorce decree reflects that the trial court "reviewed the settlement agreement and found its contents to be within the bounds of the law." *Gravley v. Gravley*, 278 Ga. 897, 899 (2) (608 SE2d 225) (2005).

In 2000 the trial court determined it was appropriate to incorporate into its divorce decree the parties' agreement with its provisions setting appellee's child support obligation for the couple's two

children at 28 percent[4] and waiving appellee's right to downward modification below a pre-determined "floor amount" of alimony in the form of child support. The trial court here found in October 2004 that the settlement agreement was enforceable because there was "no evidence" of fraud, mutual mistake, overbearing or any other legal defense. See generally OCGA § 13-5-1 et seq. (defense to contracts). Review of the entire record, including the transcript of the subsequent April 2004 hearing, establishes that this finding was demanded by the evidence adduced by the parties. That review further establishes that there is no evidence of the "special circumstance of the requirements of justice and fairness" referenced by the trial court to support its decision to deem void the waiver in the parties' settlement agreement of downward modification below a pre-determined "floor amount" of alimony in the form of child support. Accordingly, the trial court erred by relieving appellee of his obligations imposed by the settlement agreement incorporated into the divorce decree. See generally OCGA § 9-11-60.

2. Given the validity of the settlement agreement provisions, appellee makes the alternative argument that those provisions do not preclude him from seeking downward modification of his child support obligation. He argues that the language in Paragraph 7, i.e., "in no event shall said child support be less than the $1657.86 per month," does not comply with the strict requirement for right of modification waivers as set forth in *Varn*, supra, 242 Ga. at 311 (1), and the waiver language in Paragraph 17, albeit taken verbatim from *Varn*, does not apply to child support obligations because it refers only to "alimony." Pretermitting his argument regarding Paragraph 7, we find meritless his argument regarding Paragraph 17 that alimony does not include child support in light of long-standing statutory and case law establishing that alimony includes support for a spouse or for a child or children.

Statutory language recognizing that alimony is for the support of a child or children has been part of Georgia law for over half a century. See Ga. L. 1955, p. 630.[5] OCGA § 19-6-19 (d) provides the procedure for modification of either alimony for the support of children or alimony for the support of a spouse. Accord *Williams v. Williams*, 268 Ga. 126 (485 SE2d 772) (1997) ("OCGA § 19-6-19 provides that permanent alimony for the support of a spouse or child in a divorce

---

[4] See OCGA § 19-6-15 (b) (5), which sets the applicable percentage of gross income for support of two children at 23 to 28 percent.

[5] Changes within Title 19 Article 6 made during the 2005 and 2006 legislative sessions are not effective until January 1, 2007. See Senate Bill 382 § 13.

decree may be modified" for certain specified grounds). OCGA § 19-6-20 clarifies that in a proceeding under OCGA § 19-6-19:

> The only issue is whether there has been such a substantial change in the income and financial status of either former spouse *or in the needs of the child or children, in cases of permanent alimony for the support of a child or children*, or in the income and financial status of either former spouse, in cases of permanent alimony for the support of a former spouse . . . .

(Emphasis supplied.) The statutory framework of OCGA § 19-6-1 et seq. contains numerous other references to support of children by means of an award of alimony. E.g., OCGA § 19-6-14 (pending final divorce, judge "may grant as alimony a sum sufficient for the support of the children of the parties"); OCGA § 19-6-17 (c) (where child support not determined in divorce is later granted in separate proceeding, order granting support is subject to modification under same terms as "provided for in other cases of permanent alimony for the support of children granted in connection with" the final divorce decree); OCGA § 19-6-18 (a) (authorizing revision of certain judgments providing for "permanent alimony for the support of a wife or child or children, or both, rendered prior to July 1, 1977"); OCGA § 19-6-22 (authorizing party obligated to pay alimony to pay attorney fees in modification action incurred by former spouse "either on behalf of the former spouse, or the child or children, or both, in defense thereof"); OCGA § 19-6-27 (a) (after grant of foreign divorce, resident spouse may seek "permanent alimony for the support of such spouse and the child or children of the parties, if any").

Likewise, case law has recognized for over a century that alimony includes support for children, leaving no question regarding the relationship of child support to alimony. See *Rochester v. Rochester*, 124 Ga. 993, 994 (53 SE 399) (1906), holding that "[t]he object of alimony is the support of the children as well as the wife." See also *Eskew v. Eskew*, 199 Ga. 513 (34 SE2d 697) (1945). Accord *Smith v. Smith*, 254 Ga. 450 (330 SE2d 706) (1985) (purpose of alimony is to provide support for the spouse and minor children); *Finch v. Finch*, 213 Ga. 199, 201 (97 SE2d 576) (1957) ("[t]he fundamental basis of the law is to require the husband to pay necessary expenses of his wife and minor children. Such payments, irrespective of the specific expense they satisfy, whether food or attorney's fees, are all alimony, and are embraced in that term"). This distinction drawn between alimony for spousal support and alimony for child support reflects why *Beard v. Beard*, 250 Ga. 449 (298 SE2d 495) (1983), cited by appellee, fails to support his argument, because in that case the

parties' waiver specified that it applied to "permanent alimony *for Wife*," (emphasis supplied), and thus expressly excluded alimony for the support of any child or children of the parties.

3. Given the evidence of record supporting the "fluctuations" in appellee's employment status and income found by the trial court, we find no abuse of discretion in the trial court's ruling that, although appellee's new job provided him with an annual income of $60,000 and his previous job paid $93,500 per annum, appellee had an earning capacity of $75,000 per annum. See generally *Duncan v. Duncan*, 262 Ga. 872 (1) (426 SE2d 857) (1993).

4. The trial court's order voiding the downward modification of child support waiver is reversed, its award of child support in the amount of 25 percent of appellee's monthly income is vacated and the case is remanded to the trial court for entry of a child support award in the amount of 28 percent of appellee's gross income.[6]

*Judgment reversed. All the Justices concur, except Benham and Hines, JJ., who dissent.*

HINES, Justice, dissenting.

As the provision of the settlement agreement upon which the majority relies was properly declared void by the trial court, I respectfully dissent.

The parties to a divorce are permitted to waive their statutory rights to modify alimony. See *Varn v. Varn*, 242 Ga. 309 (248 SE2d 667) (1978). However, parents in a divorce action cannot waive the rights of their children to seek increases in child support payments, although they can waive their own rights to seek a decrease in such payments. *Nelson v. Mixon*, 265 Ga. 441, 441-442 (1) (457 SE2d 669) (1995); *Livsey v. Livsey*, 229 Ga. 368, 369 (191 SE2d 859) (1972). Such a waiver in a settlement agreement must be express, specific, and refer to the right being waived. *Nelson*, supra at 442-443 (2); *Varn*, supra; *Livsey*, supra.

The settlement provision in which the majority finds a waiver states: "[t]he parties hereby waive their statutory right to future modifications, up or down, of the *alimony* payments provided for herein. . . ." (Emphasis supplied.) "Child support" is not mentioned in the provision, only "alimony." Nonetheless, the majority brings child support into the ambit of the provision by declaring that child support is, by statute, simply a subset of alimony.

The difficulty with the majority's pronouncement is that it is contrary to the very statutory definition of alimony. OCGA § 19-6-1 (a) defines alimony as "an allowance out of one party's estate, made

---

[6] Should appellee's income have "fluctuated" again, his future child support obligation should be set at 28 percent of his gross income or $1,657.86, whichever is greater.

for the support *of the other party* when living separately. It is either temporary or permanent." (Emphasis supplied.) Child support, on the other hand, is for the benefit of the child, *not* the divorcing parent. *Johnson v. Johnson*, 233 Ga. 664, 665 (212 SE2d 835) (1975). A child of a marriage is in no sense "the other party" in the divorce of his or her parents. Nor does the obligation of a parent to support his or her child arise from OCGA § 19-6-1 (a), but from OCGA § 19-7-2.[7] That Code section in turn refers to OCGA § 19-6-15, which deals only with child support obligations, not alimony.[8] The Code clearly contemplates these as separate obligations. If a court orders alimony, it awards it *to a divorcing parent*, who can then exercise typical ownership rights over the alimony, including waiving certain rights concerning it. If a court orders child support, the custodial parent *is not able* to exercise the same rights regarding the support award, particularly here, the right to waive certain modification actions.

The majority includes several citations to statutory sections suggesting that child support is but one variety of alimony, but this litany does not demonstrate such a relationship, only that there has been inconsistent, and confusing, statutory use of the term "alimony." Yet despite this confusion in terms, the majority finds that the provision meets the requirement that a waiver be express and specific. *Nelson*, supra at 442-443 (2); *Varn*, supra; *Livsey*, supra. The proper view is that the statutory framework, at the very least, lacks clarity concerning the relationship of child support to alimony, and that in such a circumstance, a court cannot say, as the majority does, that the waiver provision is enforceable.

That this is so can also be seen in the language of the provision. It states that it is a waiver of the "statutory right to future modifications, *up or down*, of the alimony payments. . . ." (Emphasis supplied.) The majority declares that this constitutes an express waiver of the right to seek modification of child support obligations downward. However, the provision as written is impossible to effectuate under the majority's interpretation of law, for parents cannot

---

[7] OCGA § 19-7-2 at the time of this provision read:
It is the joint and several duty of each parent to provide for the maintenance, protection, and education of his or her child until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs, except as otherwise authorized and ordered pursuant to subsection (e) of Code Section 19-6-15 and except to the extent that the duty of the parents is otherwise or further defined by court order.

[8] Present OCGA § 19-6-15 contains no reference to alimony. A 2006 amendment to OCGA § 19-6-15, effective January 1, 2007, mentions "alimony," but only in two contexts: alimony receipts as a component of a *party's* gross income; and as a potential basis for a deviation from the Presumptive Amount of Child Support. See Ga. L. 2006, p. 583, § 4 (Act no. 650, signed April 28, 2006).

contract to waive the right to seek modifications of the "alimony" of child support "up or down." *Nelson*, supra at 441-442 (1); *Livsey*, supra. Although the majority purports to recognize the principle that parents in a divorce action cannot waive the right of their children to seek increases in child support payments, it upholds a provision that specifically states that the principle *can* be violated. This anomalous result is produced by the majority's insistence that any reference to "alimony" also embraces "child support" obligations.

Although the majority asserts that its decision is premised upon *Varn*, supra, it omits from its discussion important facets of that case. In fact, *Varn* does not approve the text "[t]he parties hereby waive their statutory right to future modifications, up or down, of the alimony payments provided for herein" as applying to modifications of *child support*; the case did not present any question of waiver of the right to seek a change in child support, only alimony for the support of a divorcing party. In *Varn*,

> [t]he former husband sued for a reduction of his obligations established in a prior divorce decree and for contempt based on denial of his visitation rights. *The former wife defended by asserting that the husband had waived his right to seek modification of alimony and that there were no grounds for reduction of child support.* She counterclaimed that the husband was in contempt for failure to comply with specific provisions of the previous decree.
>
> The trial court dismissed the husband's action for modification of alimony after finding that he had waived his right to modification. *After hearing testimony, the court denied modification of child support.* As to the wife's counterclaim for contempt, the trial court held the husband in contempt after finding that he was financially capable of complying with the provisions of the decree and had failed to do so.

Id. (Emphasis supplied.) Clearly, the parties, the trial court, and this Court in *Varn* all recognized the factual and legal distinction between alimony and child support. It is only in the context of the purported waiver of the right to modify *alimony* for the support of a spouse that the *Varn* language cited by the majority "will be deemed to comply" with the requirements for a valid waiver. The fact that, as the majority notes, the language in the provision at issue is "taken verbatim from *Varn*" is irrelevant; *Varn* simply deals with a different waiver, one which can be made under the law.

The trial court was correct in determining that the provision does not operate to waive Mr. Jones's right to seek a downward modification of child support. Its ruling comports with the statutory scheme, this Court's case law, and the common understanding of the relevant terms; alimony is for the support of a spouse, and child support is for the support of a child. Accordingly, I cannot join the majority opinion.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED JULY 6, 2006.

*Banks, Stubbs, Neville & Cunat, Robert S. Stubbs III*, for appellant.

*Edwards, Friedwald & Grayson, Robert J. Grayson*, for appellee.