**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 23, 2017**

# In the Court of Appeals of Georgia

A16A2133. LOWRY v. WINENGER.

BETHEL, Judge.

April Lowry (the "mother") appeals from a final order modifying custody, visitation, and child support with regard to her seven year-old child (the "child").[1] The mother contends that the trial court erred in awarding modification because there was not sufficient evidence presented by her former husband, Robert Winenger (the "father"), to demonstrate that a material change in circumstances adversely affecting the child had occurred. She also contends that the trial court should not have considered potential future negative impacts to the child in determining that a

---

[1] The mother filed an application with this court for discretionary appeal of the trial court's order. This Court ruled that the order is directly appealable under OCGA § 5-6-34(a)(11) and granted her application.

material change in circumstances had occurred. For the reasons stated below, we affirm.

When considering a ruling on a material change in circumstances, this Court views the evidence in the record in the light most favorable to the trial court's order and will affirm the trial court's decision "if there is any evidence to support it." *Horn v. Shepherd*, 292 Ga. 14, 18 (732 SE2d 427) (2012) (citation omitted). So viewed, the mother and the father were divorced in 2013. Since that time, pursuant to their divorce decree, they have shared custody of the child with parenting time divided roughly equally between them. The mother has been the child's primary physical custodian, and neither parent was ordered to pay child support. The divorce decree also provided, inter alia, that the father retained final decision-making authority with regard to the child's religious upbringing and instruction.

In the proceedings below, the father petitioned the court for a modification of the decree, seeking joint legal and primary physical custody of the child. A guardian ad litem (the "guardian") was appointed.

The evidence showed that several changes had taken place in the child's living and social arrangements in the time following the divorce. The mother was remarried two months after her divorce from the father was finalized. Soon after her remarriage, the mother converted to the Mormon faith, and at times when the child was with her,

the mother took the child to a Mormon church and encouraged the child to participate in other activities associated with the Mormon church. The father did not consent to the child's attendance at the mother's new church, and the father stated that the child's attendance at the church had confused the child and interfered with the father's authority over the child's religious upbringing and the father's decision to raise the child in a non-denominational Christian church.

The mother also moved from the former marital residence in Forsyth County that she lived in with the child following the divorce to a number of other residences before settling in their current home in Hall County. Both the father and the guardian testified that the mother mislead them as to where the child would be living during this period of transition.

The father and the guardian also testified that the move extended the father's drive to the mother's residence by approximately 50 minutes. The father's testimony and that of the guardian indicated that this move had made the agreed parenting plan more challenging and also made it more difficult for the child to be involved in religious, extracurricular, and educational activities in Forsyth County that the father

3

had selected for him.[2] The father's testimony indicated that the move to Hall County had facilitated the mother's interference with that authority and that, since moving, the mother had signed the child up for activities that conflicted with those chosen by the father and failed to take the child to activities that the father had scheduled for the child.

The father also presented evidence that the school the child attended in Hall County was not as highly rated as the schools he could attend in Forsyth County and that his interests would be better served by attending school in Forsyth County. The father testified that the child began to exhibit apathy toward his new school in Hall County, which he had not shown with regard to his school in Forsyth County.

In her report, the guardian suggested that a modification to the custody order should be made. She indicated that because of her understanding of the differences between the mother's church and the father's church, it was important that one parent be in charge of religious upbringing and that the other parent respect that choice. The guardian suggested that awarding primary custody to the father would best serve the child's interests.

---

[2] Under the divorce decree, the father also retained final authority over the child's extracurricular activities.

In its ruling, the trial court found that the child had suffered a number of negative impacts from these changes. First, the trial court found that the mother's actions to conceal the location of her residence from the father violated the divorce decree, showed poor judgment on her part, and negatively impacted the safety and welfare of the child. Second, the trial court found that the mother's decision to move to Hall County added to the child's commute time and demonstrated an intention to interfere with the father's relationship with the child, which negatively impacted the child. Third, the trial court found that the child began to exhibit apathy for school after his move to Hall County. The trial court found that, although the child continued to receive good grades and had demonstrated other signs of academic progress at his school in Hall County, his apathy regarding school was a negative impact resulting from the changes. Finally, the trial court found that, by taking the child to activities at her church, the mother had not respected the father's final decision-making authority with regard to the child's religious upbringing, in contravention of the divorce decree, and that this decision created confusion for the child.

Finding that a material change in circumstances adversely affecting the child had occurred and that the change in custody sought by the father was in the child's best interests, based on the totality of the child's changed circumstances and the

resulting harms noted above, the trial court granted the father's petition, awarding him primary physical custody of the child. The trial court granted visitation rights to the mother and ordered her to pay monthly child support. The trial court also held the mother in contempt for violations of the divorce decree relating to the father's authority over the child's extracurricular activities and religious upbringing. This appeal followed.

1. The mother first contends that the evidence presented to the trial court was not sufficient to demonstrate a material change in circumstance that negatively impacted the child. Once an award of child custody has been made, when the non-custodial parent seeks to change that arrangement, the trial court must determine whether there has been a material change in circumstances affecting the welfare of the child. *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012). The trial court can then determine whether the child's best interests will be served by a change in custody. *Todd v. Casciano*, 256 Ga. App. 631, 632 (1) (569 SE2d 566) (2002).[3]

"Whether particular circumstances warrant a change in custody is a fact question determined under the unique situation in each individual case." *Scott v.*

---

[3] *Cf. Terry v. Garibaldi*, 274 Ga. App. 405, 408 (618 SE2d 6) (2005) (citing *Bisno v. Bisno*, 238 Ga. 328 (232 SE2d 921) (1977) and *Daniel v. Daniel*, 250 Ga. App. 482 (552 SE2d 479) (2001)).

*Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003). This Court will not interfere with a trial court's decision "unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, we will not find there was an abuse of discretion." *Autrey v. Autrey*, 288 Ga. 283, 285 (4) (702 SE2d 878) (2010).

In this case, the trial court considered the totality of the circumstances in determining whether a material change in circumstances had occurred warranting a change in the parties' custody arrangement. Noting that no single factor was sufficient to warrant the change sought by the father, the trial court determined that, in light of all of the evidence of changes in the child's circumstances and the evidence showing their negative impact on the child, "together they constitute the required change in condition." [4]

Based on the trial court's examination of the testimony presented, we find that the record reflects sufficient evidence of both material changes in the child's circumstances and adverse affects due to such changes. The record reflects numerous

---

[4] It was proper for the trial court to consider a variety of factors impacting the child's well-being.. As the Georgia Supreme Court discussed in *Bodne v. Bodne*, 277 Ga. 445, 447 (588 SE2d 728) (2003), it is appropriate for the trial court to consider "the myriad factors that had [an] impact on the [child] as established by the evidence adduced before it."

7

changes in the child's living, extracurricular, and school arrangements since the parties' divorce. As to the impact of those changes on the child, the father's statements regarding the child's apathy toward schoolwork are evidence of an adverse affect on the child. *See Fox v. Korucu*, 315 Ga. App. 851, 855 (729 SE2d 16) (2012) (holding that an affidavit submitted by a parent stating that the child was unhappy and stressed about attending her current school was evidence of an adverse change materially affecting the child sufficient to create a material question of fact). Likewise, the father presented evidence as to differences between the father's church and the Mormon church attended by the mother and the confusion that the child suffered as a result of his exposure to both systems of belief.[5]

The role of the trial court is to weigh the evidence before it, and this Court "will not interfere with [the trial judge's] finding when there is any evidence to support it." *Horn,* 292 Ga. at 18 (citations omitted). Finding such evidence in the record, we hold that it was sufficient for the trial court to determine that a material change in circumstance adversely affecting the child had occurred.

---

[5] Importantly, for the purposes of our analysis, this confusion was the direct result of the mother acting in direct contravention of the divorce decree.

8

2. The mother also contends that the trial court erred by looking to potential future negative impacts on the child in determining that a current change in circumstances had occurred. In support of her argument, the mother quotes a portion of the trial court's order stating that the mother would not make future decisions in the child's interest. This is a selective reading of the trial court's statement.

Summarizing its rationale for awarding the custody modification sought by the father, the relevant passage of the trial court's order states,

> The Court also concludes that the Mother has demonstrated that if she maintains custody, she will continue to make decisions which are in her best interest, not the best interest of the [] Child. The Mother stated her intention to ignore the Father's decision making authority. Such decisions will negatively impact [the Child] in the future.

By directing this Court to only the final sentence of the above text, the mother mischaracterizes the purpose of the trial court's statement and its basis in the record. Rather than a further explanation of the adverse impact on the child resulting from changes in his circumstances, which the trial court had already discussed in its order, we view these statements as part of the trial court's analysis of what custody arrangement will be in the child's best interests. The trial court examined the mother's current behavior and found, based on the record before it, that she would likely

9

continue disregarding the parenting plan to the child's detriment. We find no legal error in this analysis.

OCGA § 19-9-3 (a) (2) provides that a judge considering a custody issue "may take into consideration all the circumstances of the case . . . in determining to whom custody of the child should be awarded," and that "[t]he duty of the judge . . . shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness . . . ." The trial court's task in all custody matters is necessarily a forward-looking analysis, and in such matters it "has very broad discretion, looking always to the best interest of the child." *Autrey*, 288 Ga. at 285.

Here, because the trial court identified adverse impacts on the child that it deemed to be the result of changes to his circumstances, the trial court could then determine how a change to the custody arrangement would best benefit the child. In making that analysis, the trial court had the discretion to consider the evidence before it, including evidence regarding the potential impact on the child should the current

custody arrangement continue,[6] the recommendations of the guardian,[7] evidence regarding the actions of one parent to further or impede the child's relationship with the other parent,[8] the parties' adherence to the terms of the divorce decree,[9] the mother's actions to mislead the father and the guardian,[10] and any other relevant

---

[6] *See Bodne*, 277 Ga. at 446 (discussing testimony received by the trial court regarding irreparable harm that would be suffered by the child were the current custody arrangement to continue).

[7] *See Kuehn v. Key*, 325 Ga. App. 512, 517 (1) (754 SE2d 103) (2014) and § OCGA 19-9-3(a)(3)(O) (permitting the judge to consider recommendations of a guardian ad litem in determining the child's best interests).

[8] *See* OCGA § 19-9-3(a)(3)(N) (permitting the court to consider the "willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.").

[9] *See Bodne*, 277 Ga. at 446-47 (discussing how actions by one parent which negatively impact important aspects of the parties' divorce agreement, i.e., the goal of continuing the parents' equal involvement in the child's life, are factors the trial court may consider in determining that a change in custody is in the child's best interest).

[10] *See Viskup*, 291 Ga. at 105 (discussing trial court's consideration of evidence that the custodial parent had been held in contempt for violation of the court's visitation orders and had taken steps to undermine the other parent by sending misleading letters to government agencies).

11

factor.[11] In weighing such factors, the trial court concluded that the best interests of the child would be served by a change in the custody arrangement.

Deferring to the trial court's factual determinations based on the evidence in the record, we find that these factors were appropriately considered in this case, and accordingly we find no legal error in the ruling of the court below.

*Judgment affirmed. Dillard, P. J., and Reese, J., concur.*

---

[11] OCGA § 19-9-3(a)(3).