**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 2, 2020**

# In the Court of Appeals of Georgia

A20A1243. BURNHAM v. BURNHAM.

GOBEIL, Judge.

Lora Alexa Burnham ("Alexa") appeals from the trial court's order granting her ex-husband Michael Bruce Burnham's ("Bruce's") petition to modify custody of their two children. In a single enumeration of error, Alexa contends that the trial court erred in finding that there had been a material change in circumstances affecting the children's best interests to warrant a change in custody. For the reasons that follow, we affirm the trial court's order.

"When considering a ruling on a material change in circumstances, this Court views the evidence in the record in the light most favorable to the trial court's order and will affirm the trial court's decision if there is any evidence to support it." *Lowry v. Winenger*, 340 Ga. App. 382, 382 (797 SE2d 230) (2017) (citation and punctuation

omitted). "This Court is mindful that 'the Solomonic task' of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." *Gordy v. Gordy*, 246 Ga. App. 802, 803 (1) (542 SE2d 536) (2000) (citation and punctuation omitted).

So viewed, the evidence shows that Alexa and Bruce were divorced in June 2016. They have two children together, a son, born in 2007, and a daughter, born in 2010. As part of their divorce, the parties entered into a separation agreement that laid out most of the details of the divorce. Neither party was represented during the divorce, and the parties downloaded the separation documents from the website "Legal Zoom." The separation agreement was incorporated into the final judgment and decree of divorce.

The separation agreement awarded the parties joint legal custody, with Alexa having primary physical custody of the children and Bruce having visitation from Wednesday afternoon to Sunday afternoon on the first and third weekends of each month, as laid out in a separate parenting plan. Bruce agreed to pay $1,746 in child support per month. Alexa was awarded the marital home, which was located in Palmetto, Coweta County, Georgia. Under a heading titled "Miscellaneous

2

Agreements," the parties "agree[d] to live within one-hundred twenty (120) miles of the current home address of [the marital home] until minor children are of age eighteen (18) unless either party and/or their spouse relocates due to employment" (the "relocation provision").

In November 2017, Alexa informed Bruce that she intended to move from Coweta County to a new residence located in Marietta, Cobb County, Georgia.[1] Based on the intended move, Bruce filed a complaint to modify child custody, parenting time, and child support, asserting that the move would constitute a material change in circumstances warranting a change in custody. Bruce did not allege that Alexa had violated the relocation provision, nor did he reference the relocation provision in his petition. Alexa filed her own petition for modification of visitation, explaining that her upcoming move would "necessitate a modification in the current visitation schedule." She also requested a finding of contempt against Bruce, alleging that he was $2,351.42 in child support arrears.[2] The trial court consolidated the petitions, and the case proceeded to an evidentiary hearing.

[1] The parties do not dispute that Alexa's new home is located within 120 miles of the marital home.

[2] Bruce later admitted to the arrearage, and agreed to pay $200 per month to Alexa towards the amount owed.

Alexa testified that she had already begun her move to Marietta at the time of the hearing; however, the school year had not yet started for the children and she was not yet living in the new house full time. Alexa was engaged and would living in the new home with her fiancé and his son, who lived with them part time. She explained that both her and her fiancé's jobs were the impetus behind the move. At the time of the hearing, Bruce lived in Fayette County with his current wife and her three children. Since filing his motion to modify, Bruce had contracted to purchase a home located within his and Alexa's children's school district in Coweta County, which would allow the children to remain at the same school if Bruce was awarded custody. Witnesses testified that the children have a good relationship with their step-siblings, and Alexa testified that the children treat her fiancé's son as a brother.

Both Alexa and Bruce testified that their separation was amicable, and they co-parented well in the year after the divorce. The two were "flexible' with Bruce's visitation schedule, allowing him much more time with the children than dictated by the parenting plan. Bruce estimated that the children spent almost 50% of their time with him. Sometime in 2017, however, the relationship between the parties changed, and communication between the parties became difficult. Alexa attributed the change to Bruce's new wife, while Bruce believed it was due to his approaching Alexa to ask

to reduce the amount of child support he paid to her. Alexa began to strictly enforce the terms of the parenting plan.

Witnesses testified about the details of the children's lives. The children had lived in Coweta County their whole lives, and once Alexa's move was complete, it would require the children to change school districts and churches. The children's youth minister testified that the children were regular attendees of their Coweta County church, and the son had just begun volunteering with younger children with his step-mother. The move would also affect the children's contact with friends and other family members, and their extracurricular activities. For example, Bruce's mother testified that she was used to spending a lot of time with the children under the current custody arrangement, getting to see them on the weeks that Bruce has visitation, and she was concerned that she would not have the same involvement with them after the move. Alexa also acknowledged that the move would necessarily alter the time that the children would spend with Bruce. Bruce's "weekends" with the children began on Wednesdays under the current parenting plan, and it would not be feasible to transport the children so far during the school week.

Additionally, because of behavioral changes Alexa and Bruce had noticed in their son since divorcing, the boy had been seeing a psychologist for more than a year

5

to help him cope with his parent's divorce. The psychologist testified at the evidentiary hearing that the boy had "mixed feelings" about Alexa's planned move, based mostly on changes in how often he would see his father and the friends from his old school. When asked if he was concerned about moving with his mother, the son testified that was scared to move, but expressed that "change is good, right?" Because the son had expressed to his psychologist that he did not want to be asked to choose between his parents, the court did not inquire further into the boy's desires.

After the hearing, the trial court issued a final order granting Bruce's petition. Specifically, the court found that it was in the best interests of the children to remain in Coweta County, and thus transferred primary physical custody of the children from Alexa to Bruce. Alexa appealed from the original order. We vacated the trial court's order because it failed to consider the threshold question of a material change in circumstances before moving on to the issue of what was in the children's best interest, and we remanded for further proceedings. *Burnham v. Burnham*, 350 Ga. App. 348, 348-350 (829 SE2d 425) (2019).

Subsequently, the trial court issued a second final order, explicitly finding that there were four material changes in circumstances justifying the change in custody, namely: (1) the significant reduction in visitation and parenting time that the children

6

had with Bruce since 2017; (2) Alexa's relocation to Marietta; (3) Bruce buying a home within the children's school district in Coweta County, which would allow them to remain in the same school district; and (4) the son's enrollment in counseling after he exhibited behavioral changes related to the divorce. The court then found that it was in the children's best interest for primary physical custody to be awarded to Bruce noting first that the children are bonded to both parents equally, and both parents are capable of handling primary custody. The court went on to conclude that continuity for the children is important, and having them continue to reside in Coweta County would not disrupt their school, church, extracurricular activities, friendships, and relationships with their step-families and other family members. Thus, the court awarded primary custody to Bruce, and the recalculation of child support indicated that Alexa would pay Bruce $669 per month in child support.

Alexa filed a motion for new trial, which was denied following a hearing. This appeal followed.

In her sole enumeration of error, Alexa contends that the trial court erred in finding a material change in circumstances affecting the children's best interests to justify changing custody. Specifically, she argues that the separation agreement, executed by the parties and incorporated into the divorce decree, contemplated that

the parties would live within 120 miles of the marital home in Palmetto, Georgia and precluded such a finding. She states: "by the express terms of the Separation Agreement . . . [the parties] contemplated that the Parenting Plan and custodial arrangement would remain in effect for so long as both parties reside within one hundred (120) miles of [the marital home]." Thus, she is asking this Court to interpret this provision as a waiver by Bruce to his right to ask for a modification of custody unless Alexa moved more than 120 miles from their marital home. We do not agree that the provision can be interpreted as Alexa contends.

"Once an award of child custody has been made, when the non-custodial parent seeks to change that arrangement, the trial court must determine whether there has been a material change in circumstances affecting the welfare of the child." *Lowry*, 340 Ga. App. at 384 (1). The trial court then determines "whether the child's best interests will be served by a change in custody." Id. at 384-385 (1). "Whether particular circumstances warrant a change in custody is a fact question determined under the unique situation in each individual case," and we "will not interfere with a trial court's decision unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, we will not find there was an abuse of discretion." Id. at 385 (1) (citations and punctuation omitted).

Here, there is evidence to support the trial court's finding of a material change in circumstances to warrant a change in custody. Relocation of one parent does not alone constitute a material change in circumstances. *Mahan v. McRae*, 241 Ga. App. 109, 112 (522 SE2d 772) (1999). Instead, "[w]hen exercising its discretion in relocation cases, as in all child custody cases, the trial court must consider the best interests of the child[ren] and cannot apply a bright-line test." *Bodne v. Bodne*, 277 Ga. 445, 446 (588 SE2d 728) (2003).

Rather than focusing exclusively on Alexa's relocation, the trial court in this case correctly considered multiple factors affecting the children, including their living arrangements, the time spent with their father, their participation in church and other extracurricular activities, their individual relationships with their parents, step-parents, step-siblings, other family members, and their friendships. See *Lewis v. Lewis*, 252 Ga. App. 539, 541-542 (2) (557 SE2d 40) (2001) (upholding a trial court order modifying custody based on a 72-mile move by the mother that would affect the practicality of the parties' visitation arrangement and change the children's school district and activity schedules). Some of these aspects of their lives already had changed since the time of the original custody agreement, such as the amount of time spent with their father, and several more would change as a result of Alexa's

relocation, such as the extracurricular activities they could participate in and the church they would attend. See *Lowry*, 340 Ga. App. at 386 (2) (a trial court is permitted to look forward to potential future impacts on the children when determining whether a material change in circumstances has occurred). As the trial court noted in its order, the material changes found by a court do not have to be for the worse to trigger a change in custody. *Weickert v. Weickert*, 268 Ga. App. 624, 627 (1) (602 SE2d 337) (2004).

Additionally, the Burnhams' son had already experienced behavioral changes since the time of the separation agreement, which required counseling, and there was testimony that he was nervous about the change that would come with the move. See *Fox v. Korucu*, 315 Ga. App. 851, 855 (729 SE2d 16) (2012) (holding that an affidavit submitted by a parent stating that the child was unhappy and stressed about attending current school was evidence of a change materially affecting the child); . Thus, we find that the trial court's finding of a material change in circumstances was not based on Alexa's relocation alone, but rather on the court's assessment of multiple factors in the children's lives. And the trial court's finding was supported by some evidence and was not an abuse of its discretion. See *Lowry*, 340 Ga. App. at 384-384 (1) (where some evidence showed "numerous changes in [a] child's living,

10

extracurricular, and school arrangements since the parties' divorce," and some impact from those changes, we "will not interfere with the trial judge's finding" of a material change in circumstances affecting the child) (citation and punctuation omitted).

Next, we disagree with Alexa's contention that the express terms of the separation agreement amount to a waiver by Bruce to not seek a change in custody unless Alexa relocated more than 120 miles from the marital home. Divorcing spouses are generally free to waive both statutory and constitutional rights in their divorce agreements. See *Daniel v. Daniel*, 250 Ga. 849, 850-852 (2) (301 SE2d 643) (1983) (affirming the enforcement of a waiver of the right to seek modification of alimony). See also OCGA § 19-9-5 (a) (divorcing parents may include in their separation agreement "any and all issues concerning custody of the child"). "Settlement agreements in divorce cases must be construed in the same manner and under the same rules as all other contractual agreements." *Jones v. Jones*, 280 Ga. 712, 714 (1) (632 SE2d 121) (2006) (citation and punctuation omitted). As such, divorcing parents are free to waive many rights in a separation agreement, unless prohibited by statute or public policy, but any waiver provision "must be cast in very clear waiver language." Id. at 714-715 (1) (affirming a parent's contractual waiver of

11

his right to seek a downward modification of child support) (citation and punctuation omitted).

The relocation provision at issue here did not include "very clear waiver language." *Jones*, 280 Ga. at 714 (1). For example, it did not include the word "waive" or "waiver," nor did set forth any specific right being waived. Rather, the provision was found in a "Miscellaneous Agreements" section of the separation agreement, among various other agreements between the parties,[3] none of which related to the legal or physical custody of the children. Nothing in the provision connects it to the parties' agreements concerning custody of the children in any way. See *Jones*, 280 Ga. at 714 (1) (stating that a waiver of the right to seek a downward modification of child support must specifically refer "to the right of modification"). Thus, we do not find that the relocation provision amounts to a waiver by either party of his or her right to seek a modification in child custody based on the relocation of the other party within 120 miles of the marital home.

---

[3] Other agreements in this section concern business expenses paid by Bruce from joint accounts before the finalization of the divorce, how the parents would introduce future romantic partners to the children, how the proceeds of the sale of the marital home would be distributed, that the parties will provide tax information to each other, and how they will split the cost of potential mediation.

12

Additionally, to the extent that Bruce's intent or conduct with respect to entering into the relocation provision is relevant, despite Alexa's assertions to the contrary, Bruce did not admit that the parties intended this provision to preclude a potential change in custody based on the parties' living arrangements. At the hearing on the modification petition, when asked about this provision by Alexa's attorney, Bruce stated that "it was part of the Legal Zoom paperwork" and he believed it to be "commonplace" language. These answers do not show any specific intent behind the provision, and Alexa points to no other actions by Bruce that would allow this Court to infer that he intentionally waived his rights regarding the custody arrangements of his children. Thus, Bruce's limited testimony on this issue did not establish a clear or unequivocal waiver that was not otherwise present in text of the separation agreement. See *BCM Constr. Group, LLC v. Williams*, 353 Ga. App. 811, 815 (1) (840 SE2d 51) (2020) (waiver of a contractual right may be shown by conduct, but "the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist") (citation and punctuation omitted); *Salinas v. Atlanta Gas Light Co.*, 347 Ga. App. 480, 486 (2) (819 SE2d 903) (2018) ("implied waiver" may be shown by a party's "decisive, unequivocal conduct reasonably inferring the intent to waive") (citation and punctuation omitted).

Accordingly, for all of the reasons explained above, we affirm the trial court's order in this case.[4]

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*

---

[4] Because we conclude that the relocation provision does not constitute a waiver of Bruce's right to seek a modification of custody based in part on Alexa's relocation, we need not address the parties' remaining arguments concerning whether divorcing parents in a separation agreement may waive the right to seek a modification of custody under specific circumstances, or whether such waivers violate this State's public policy.