S92A0837. ALLEN v. GEORGIA DEPARTMENT OF
HUMAN RESOURCES.
(423 SE2d 383)

HUNT, Justice.

Franklin Allen, the appellant, and Jean Allen were divorced in South Carolina, and in 1988 a South Carolina family court ordered the appellant to pay $300 per month for the support of the Allens' minor child. The South Carolina court found that

> the Respondent now claims no earnings, that he is not engaged in the practice of law[,] and according to his testimony the restaurant business that he recently opened has been unsuccessful.´. . . This Court does find, however, that the Respondent has the requisite health, education, professional licenses, and the ability to pay the sum of $300 per month as child support at this time.

After moving to Georgia following her divorce, Jean Allen applied to the Georgia Department of Human Resources (DHR) for child support enforcement services, pursuant to OCGA § 19-11-6.[1] The DHR filed a complaint on behalf of the child to domesticate and modify the South Carolina decree to increase child support payments, (alleging that the financial ability of the appellant had changed). The DHR

---

[1] OCGA § 19-11-6 provides, in relevant part:
(c) The [DHR] shall accept applications for child support enforcement services from any proper party or person notwithstanding the fact that the child or children do not receive public assistance. When made, this application to the [DHR] shall constitute an assignment of the right to support to the [DHR] and the proceeds of any collections resulting from such application shall be distributed in accordance with the standards prescribed in the federal Social Security Act.

contends, and the appellant does not dispute, that the appellant now makes $4,595 per month as an attorney for the United States Department of Housing and Urban Development.

The trial court denied the appellant's motion to dismiss the complaint, holding as follows:

> There is legal authority for the Georgia Department of Human Resources to bring an action on behalf of the minor child to domesticate and to modify a grant of child support pursuant to a decree of divorce entered in a foreign state. *Scruggs v. Georgia Department of Human Resources*, 261 Ga. 587 [408 SE2d 103] (1991); *Hutto v. Plagens*, 254 Ga. 512, 514, 330 S.E.2d 341 (1985).

We granted the appellant's application to appeal the trial court's denial of the motion to dismiss. The appellant first argues, in substance, that an action for **domestication** is not within the statutory authority of the DHR under OCGA § 19-11-8,[2] and that therefore the DHR lacks standing to bring this **modification** action. Since the DHR lacks standing to bring the modification action, argues the appellant, Jean Allen is a necessary party to the action. The appellant also contends that the modification action should have been dismissed since (a) the child did not receive public assistance, and (b) there was no allegation in the complaint that the child was in need of additional support. For the reasons that follow, we affirm the trial court.

1. We first address the appellant's contention that the DHR lacks standing to bring this modification action. We conclude that because the DHR has the statutory authority to file a modification action, it has the right, as part of that action, to domesticate the South Carolina decree.

In *Scruggs*, this Court found no error in the trial court's holding "that the DHR was authorized to bring an action on behalf of the appellant's two minor children to modify his support obligation to them," *Scruggs*, supra at 589, and we affirmed the trial court's denial of the appellant's motion to dismiss the DHR's complaint. OCGA

---

[2] OCGA § 19-11-8 states, in part:

(b) The [DHR] shall accept applications for child support enforcement services from a custodian of a minor child who is not a recipient of public assistance and shall take appropriate action under this article, the child support statutes, or other state and federal statutes to assure that the responsible parent supports the child. . . .

(c) Any action initiated by the [DHR] pursuant to subsection (b) of this Code section or in any action in which the [DHR] appears pursuant to subsection (b) of this Code section shall be limited solely to the issue of support and shall exclude issues of visitation, custody, property settlement, or other similar matters otherwise joinable by the parties.

§ 19-11-8 (b), although not relied on in *Scruggs*, supports the holding that the DHR is entitled to bring a modification action because a modification action is an "appropriate action . . . to assure that the responsible parent supports the child."

In *Hutto v. Plagens*, supra, this Court stated that "[a] plea for domestication of a foreign divorce decree may be asserted in the same action in which modification of that decree is sought, *Blue v. Blue*, 243 Ga. 22 (252 SE2d 452) (1979)." *Hutto*, 254 Ga. at 514. *Hutto* thus stands for the proposition that a party who is entitled to bring a modification action may also assert, as part of that action, a plea for domestication of a foreign decree. Based on the foregoing, we hold that because the DHR can properly bring an action to modify child support obligations, it is entitled to seek to domesticate a foreign decree "in the same action in which modification of that decree is sought," just as a party to the original modification decree would be entitled.[3]

2. The appellant argues that regardless of whether the DHR could domesticate the foreign decree, the complaint does not support a modification action because (a) the child does not receive public assistance, and (b) there is no allegation in the complaint that the child is in need of additional support. We conclude that although DHR may bring a modification action on behalf of a child who does not receive public assistance, the DHR must allege that the child is in need of additional support. Nevertheless, for the reasons that follow, we affirm the trial court's denial of appellant's motion to dismiss.

First, the DHR is not only authorized, but is required to accept applications from a custodian of a minor child who is not a recipient of public assistance. OCGA § 19-11-8 (b). See also OCGA § 19-11-6 (c). However, we interpret OCGA § 19-11-8 (b) to authorize DHR to file modification actions on behalf of children who do not receive public assistance only in cases where DHR can show the child's need for additional support. DHR is not authorized to seek modification of child support on behalf of a child not receiving public assistance solely on the basis of a change in either parent's financial circumstances.[4]

In reaching the foregoing conclusion, we recognize that under the general modification statute, OCGA § 19-6-19, either parent may seek modification of support based on a change in either of their financial circumstances, or on the needs of the children. We further recognize

---

[3] In addition, it should be noted that under OCGA § 19-11-6 (c) (see footnote 1, supra), an application to the DHR for child support enforcement services "constitute[s] an assignment of the right to support to the [DHR]." After such an application has been filed, the DHR, not the custodial parent, is the proper party to file a modification action. Cf. *DHR v. Bagley*, 240 Ga. 306 (240 SE2d 867) (1977).

[4] Of course, evidence relative to the income and financial status of either parent is relevant on the issue of need. See OCGA § 19-6-19 (a).

that, as an assignee to a parent's support rights, see Division 1, DHR, to some degree, stands in the shoes of the party seeking support.[5] However, we do not believe the Legislature intended to give DHR the power to seek modification of support to the same extent a parent may do so. Rather, the legislative history behind OCGA § 19-11-8 indicates an intent to authorize DHR to pursue appropriate action to assure adequate support from the responsible parent of a minor child not receiving public assistance, in order to prevent the child's family from having to apply for public assistance.[6] Of course DHR is not *limited* to asserting a claim for modification on behalf of children only where the custodians of those children otherwise would have to seek public assistance. Such action may be pursued even where, as in this case, the child's status is well above the requirement for public assistance, so long as the need for additional support legitimately can be asserted.[7]

DHR's complaint in this case does not allege that the child needs additional support, but alleges only that the father's financial status has improved substantially so that additional support is warranted. Nevertheless, in light of the facts that appellant's motion to dismiss was based on the pleadings, and that our holding regarding DHR's limited authority in modification proceedings for non-public assistance families was not readily apparent from a reading of the relevant statutes, DHR may amend the complaint in this case to cure its deficiencies. Accordingly, this case is remanded to the trial court to provide DHR an opportunity to amend its complaint, if it can, consistent with this opinion.

---

[5] It would appear the father should be able to raise against DHR whatever claims and defenses he might have had against the mother, including a right to seek attorney fees and expenses, if appropriate, under OCGA § 19-6-19 (d).

[6] OCGA § 19-11-8, which, before 1985, gave DHR discretion to accept applications for enforcement services from parents of minor children not receiving public assistance, was amended in 1985 to require DHR to accept such applications. Ga. L. 1982, pp. 1207, 1210, § 5; Ga. L. 1985, pp. 785, 793, § 6. The Legislature passed the 1985 amendment apparently in response to the 1984 federal amendments to the Child Support Enforcement Program of Title IV-D of the Social Security Act, 42 USC § 651 et seq. See Note, Alimony and Child Support: Provide for Enforcement and Collection, Ga. State L. Rev. 424, 426 (1987). The federal amendments require state support services on behalf of children not receiving public assistance. Id. The reasoning behind the federal amendments is that, with increased child support collections for non-welfare families, those families would not then be forced to turn to public assistance. S. Rep. No. 336, 96th Cong. 2d Sess. 77-78, reprinted in 1980 U. S. Code Cong. & Ad. News 1448, 1526. See also *South Carolina Dept. of Social Services v. Deglman,* 290 S.C. 542 (351 SE2d 864) (1986), citing 42 USC § 645(6)(A); *Wehunt v. Ledbetter,* 875 F2d 1558, 1565 (11th Cir. 1989).

[7] The dissent serves as advocate for children of moderate means, who *need* no additional support, but whose court-ordered provider enjoys an enhanced financial status. We suggest that the legislature has properly reserved these situations for the private bar, recognizing that the party who enjoys the improved financial status will most likely be charged with the attendant fees and costs. See OCGA § 19-6-19 (d).

*Judgment affirmed and remanded. Clarke, C. J., Bell, P. J., Benham and Fletcher, JJ., concur; Sears-Collins, J., dissents as to Division 2 and to the remand.*

SEARS-COLLINS, Justice, concurring in part and dissenting in part.

I agree with Division 1 of the majority opinion. However, I disagree with Division 2 to the extent it requires the DHR to allege a need for additional support when bringing a modification action on behalf of a child who is not receiving public assistance. Therefore, I concur with the majority's affirmance of the trial court, but I dissent to the remand for amendment of the complaint.

The primary purpose of statutory construction is to ascertain the intent of the legislature; however, if the language of the statute is plain and unequivocal, then the intent of the legislature is apparent on the face of the statute, and it is unnecessary, in fact forbidden, to go behind the words of the statute to extraneous sources to ferret out a construction contrary to those words. *Telecom\*USA v. Collins*, 260 Ga. 362 (393 SE2d 235) (1990);[8] *Burnam v. Wilkerson*, 217 Ga. 657, 660 (124 SE2d 389) (1962); *Atlanta Casualty v. Flewellen*, 164 Ga. App. 885, 887 (300 SE2d 166) (1982). The language of the statutes at issue in this case is plain and unequivocal, yet the majority has chosen to interpret the legislative intent contrary to that language. OCGA § 19-11-2 provides as follows:

(a) The underlying purposes of this article are:

(1) To provide that public assistance to needy children is a supplement to the contribution of the responsible parents;

(2) To provide for a determination that a responsible parent is able to support his children; and

(3) To provide for the enforcement of an able parent's obligation to furnish support.

(b) This article shall be liberally construed to promote its underlying purposes.

OCGA § 19-11-8 (b) provides that

---

[8] "[T]he 'golden rule' of statutory construction . . . requires us to follow the literal language of the statute 'unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else.'" *Telecom\* USA*, 260 Ga. at 363 (Clarke, C. J., writing for the majority) (quoting *Dept. of Transp. v. City of Atlanta*, 255 Ga. 124, 137 (337 SE2d 327) (1985)).

[t]he [DHR] **shall** accept applications for child support enforcement services from a custodian of a minor child who is **not a recipient of public assistance** and **shall take appropriate action** under this article, the child support statutes, or other state and federal statutes **to assure that the responsible parent supports the child.** [Emphasis supplied.]

The majority has required the DHR to allege that the child is in need of additional support in a modification action brought on behalf of a child who does not receive public assistance. The only reason given by the majority for this requirement is that the legislative history of OCGA § 19-11-8 (b) "indicates an intent to authorize [the] DHR to pursue appropriate action to assure adequate support from the responsible parent of a minor child not receiving public assistance, in order to prevent the child's family from having to apply for public assistance." (Majority p. 524.)[9] The literal words of the statute, however, prohibit such a construction. Rather, the statute clearly requires the DHR to "take appropriate action *under this article, the child support statutes, or other state and federal statutes* to assure that the responsible parent supports the child." OCGA § 19-11-8 (b). The statutory language, then, clearly permits the DHR to pursue a modification action under OCGA § 19-6-19 (a), this state's statutory provision governing the modification of child support obligations. That Code section provides that a child support award "shall be subject to revision upon petition filed by either former spouse showing a change in the income and financial status of either former spouse *or in the needs of the child or children.*" See also *Wright v. Wright*, 246 Ga. 81, 82 (268 SE2d 666) (1980). Thus, the literal language of the statute permits the DHR to bring a modification action on behalf of a minor child not receiving public assistance based solely upon a change in the financial ability of the spouse making payments. Moreover, the plain language of OCGA § 19-11-8 contains no requirement that would restrict the DHR to filing a modification action on behalf of a child only if there has been a change in the child's needs.

---

[9] The majority also "suggests" that because the legislature has provided for the award of attorney fees and expenses in child support modification actions, it has reserved to the private bar the right to bring child support modification actions on behalf of children whose needs have not changed, but "whose court-ordered provider enjoys an enhanced financial status." (Majority p. 524, fn. 7) Of course, the private bar is as essential to the enforcement of child support orders as it is in other litigation. However, the plain language of OCGA §19-11-8 imposes no requirement of a change in need before a custodial parent is entitled to the option of requesting that the DHR file a modification action on behalf of his or her child. Moreover, the majority forgets that an award of costs and attorney fees to a custodial parent seeking modification is not assured under any statutory scheme.

Furthermore, the majority's statement of legislative intent actually contradicts its limiting construction of § 19-11-8. In this regard, allowing the DHR to seek modification of child support obligations based on the increased income of the noncustodial parent would help to ensure "increased child support collections for non-welfare families, [so that] those families would not then be forced to turn to public assistance." (Majority p. 524, fn. 6.)

Child support enforcement in our country is a national tragedy. In Georgia, non-compliance is rampant and has contributed to an epidemic of poverty for millions of children and injustice for others. OCGA § 19-11-2 and the provisions that follow seek to amend this imperfect system by providing a mechanism whereby custodial parents of dependent children in this state can, with minimal time and expense, obtain assistance with the paperwork involved in child support enforcement, with locating the person obligated to pay support and with making sure that the proper amount of money is collected and disbursed.

Until today, the Child Support Recovery Act was a powerful tool for any child who needed it. Today, for many of our state's children, it is impotent.

DECIDED NOVEMBER 16, 1992.

*Chilivis & Grindler, Nicholas P. Chilivis, J. D. Dalbey,* for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, William M. Droze, Assistant Attorney General, Robert O. Davies,* for appellee.