S09A1475. SPURLOCK v. DEPARTMENT OF HUMAN RESOURCES et al.

(690 SE2d 378)

CARLEY, Presiding Justice.

Scott Spurlock (Father) and Lois Spurlock (Mother) were divorced in 2005. Pursuant to the final divorce decree, Father was ordered to pay monthly child support of $1,063. Three years later, he initiated a review of that child support order by the Department of Human Resources (DHR) pursuant to OCGA § 19-11-12. DHR recommended that his child support obligation be reduced to $718 per month, and petitioned the trial court to adopt that recommendation.

The trial court did not fully adopt DHR's recommendation, but did order that Father's child support obligation be reduced to $1,000 per month. Acting pro se, Father appealed to the Court of Appeals pursuant to its grant of an application for discretionary appeal. The Court of Appeals then transferred the case to this Court based upon our jurisdiction over divorce and alimony cases. Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (6).

1. We initially determine whether a modification of child support arising out of a DHR review under OCGA § 19-11-12 invokes this Court's divorce and alimony jurisdiction.

"[C]ase law has recognized for over a century that alimony includes support for children, leaving no question regarding the relationship of child support to alimony. [Cits.]" *Jones v. Jones*, 280 Ga. 712, 716 (2) (632 SE2d 121) (2006). See also *Conley v. Conley*, 259 Ga. 68, 69 (2) (377 SE2d 663) (1989); *Veal v. Veal*, 226 Ga. 285, 287 (2) (174 SE2d 435) (1970). Alimony may be recovered outside the context of a divorce proceeding. However, the right to make a claim for "alimony depends upon a valid, subsisting marriage between the applicant and the [person] out of whose estate the allowance of alimony is claimed, and this is true even though it is claimed only for the support of a child. [Cits.]" *Eskew v. Eskew*, 199 Ga. 513 (2) (34 SE2d 697) (1945). Thus, an award of child support always constitutes alimony if it is made in a divorce decree proceeding, but it may or may not represent alimony outside the divorce context.

Accordingly, we have jurisdiction over a case involving an original claim for child support which arose in either a divorce or alimony proceeding. Compare *O'Quinn v. O'Quinn*, 217 Ga. 431 (122 SE2d 925) (1961). Furthermore, actions for modification of alimony either for support of a former spouse or of a child, so long as the original award arose from a divorce or alimony proceeding, have always been within this Court's jurisdiction. *Perry v. Perry*, 213 Ga. 847, 849 (1) (102 SE2d 534) (1958). See also *Parker v. Parker*, 277 Ga. 664 (594 SE2d 627) (2004); *Iannicelli v. Iannicelli*, 169 Ga. App. 155 (1) (311 SE2d 850) (1983).

This Court routinely exercises its divorce and alimony jurisdiction when actions for modification of child support previously awarded in a divorce decree are brought by a parent pursuant to OCGA § 19-6-19. See *Jones v. Jones*, supra; *Moccia v. Moccia*, 277 Ga. 571-572 (1) (592 SE2d 664) (2004); *Wilson v. Wilson*, 270 Ga. 479 (512 SE2d 255) (1999); *Wingard v. Paris*, 270 Ga. 439 (511 SE2d 167) (1999); *Robertson v. Robertson*, 266 Ga. 516, 518 (1) (467 SE2d 556) (1996). Likewise, this Court has repeatedly exercised jurisdiction in cases involving DHR's review pursuant to OCGA § 19-11-12 of child support awards originally established in a divorce decree. See *Falkenberry v. Taylor*, 278 Ga. 842 (607 SE2d 567) (2005); *Dept. of Human Resources v. Allison*, 276 Ga. 175 (575 SE2d 876) (2003); *Dept. of Human Resources v. Holland*, 263 Ga. 885 (440 SE2d 9) (1994); *Allen v. Ga. Dept. of Human Resources*, 262 Ga. 521 (423 SE2d 383) (1992).

An action for child support modification under OCGA § 19-11-12 is neither inconsistent with, nor materially distinguishable from, a modification action under OCGA § 19-6-19, such that the former, unlike the latter, does not invoke this Court's jurisdiction. Although the two code sections were enacted for different legislative purposes, "the review and modification proceedings of OCGA § 19-11-12 are

reconciled to and consistent with the modification proceedings set forth in OCGA § 19-6-19." *Kelley v. Ga. Dept. of Human Resources*, 269 Ga. 384, 386 (2) (498 SE2d 741) (1998).

Therefore, we hold that appeals from orders in proceedings for modification of a child support award which arose from a prior divorce or alimony action, regardless of the code section under which the modification was pursued, are subject to the jurisdiction of this Court. Because this case involves alimony for the support of children, we retain it and proceed to make all other necessary determinations.

2. After the Court of Appeals transferred the case here, we denied a motion to dismiss in which Mother argued that, because jurisdiction is properly in this Court, the Court of Appeals lacked jurisdiction to grant the application for discretionary appeal, and that such grant is therefore void. For the same reason, Justice Nahmias opines in his special concurrence, not that the appeal should be dismissed, but rather that, in accordance with certain unpublished orders, we should strike the transferred appeal and re-docket it as a granted application. However, such unpublished orders serve as neither binding nor physical precedent. *Tunnelite v. Estate of Sims*, 266 Ga. App. 476, 480 (3) (597 SE2d 555) (2004). It appears that we have just as often followed a different practice, as revealed in our published opinions. That practice has been simply to resolve the appeal. *Parker v. Parker*, 277 Ga. 664, 665 (594 SE2d 627) (2004); *Etheredge v. All American Hummer Limousines*, 269 Ga. 436, 437 (498 SE2d 60) (1998); *Kumar v. Hall*, 262 Ga. 639, 640 (423 SE2d 653) (1992). Although the question merely lurked in the record in those cases, such practice is supported by the only relevant authority which has clear precedential value: When this Court granted an application and then transferred the appeal, we observed that "the Court of Appeals may consider the case as it would if it had granted the application." *Collins v. AT&T*, 265 Ga. 37, 38 (456 SE2d 50) (1995).

Moreover, the procedure which we followed in the unpublished orders cited by Justice Nahmias is plainly unnecessary. Striking and re-docketing this appeal is not required to preserve our ultimate jurisdiction over the application. The special concurrence contains absolutely no authority that, whenever a case is transferred for jurisdictional reasons, every prior decision in the case must be formally vacated merely so that the receiving court can determine every motion or application anew. Throughout the pendency of this appeal, we have had the option to exercise our jurisdiction by dismissing the appeal as having been improvidently granted. By declining to do so, we have not ignored the jurisdictional limits set forth in the special concurrence, and instead have implicitly determined that the application was properly granted. In that way, we

have not only exercised our jurisdiction, we have also chosen not to slow down the already delayed appellate consideration of this case.

3. Father contends that the trial court erred in failing to make written findings in accordance with OCGA § 19-6-15 (c) (2) (E) (iii) and (i) (1) (B) (iii) of the presence or absence of special circumstances justifying a departure from the presumptive amount of child support called for in that statute's guidelines.

Mother relies in part on the absence of any transcript of the proceedings and the resulting presumption of regularity. However, a lack of mandatory written findings " 'overcomes the presumption of regularity. (Cit.)' [Cit.]" *Georgia Casualty & Surety Co. v. Valley Wood*, 290 Ga. App. 177, 178 (1) (659 SE2d 410) (2008). See also *Gilchrist v. Gilchrist*, 287 Ga. App. 133, 134 (1) (650 SE2d 795) (2007). "Even presuming the evidence supported the trial court's actions, we must first have the required findings of fact for review so that we know that the court considered the correct factors in exercising its discretion." *Rogers v. Norris*, 262 Ga. App. 857, 858 (1) (586 SE2d 747) (2003). See also *Dept. of Human Resources v. Wilcox*, 219 Ga. App. 757, 758 (466 SE2d 662) (1996) (where no transcript and no written findings pursuant to OCGA § 19-6-15, order modifying child support pursuant to DHR review vacated and case remanded for written findings). To the extent that *Carson v. Carson*, 226 Ga. App. 659, 660 (3) (487 SE2d 447) (1997) holds otherwise, it is hereby overruled.

Mother also argues that OCGA § 19-11-12 does not require the trial court to apply the guidelines or to take any action at all, because subsection (e) of that statute provides that, when the trial court finds a significant inconsistency between existing child support and the amount resulting from application of the guidelines in OCGA § 19-6-15, "the trier of fact *may* use this inconsistency as the basis to increase or decrease the amount of support ordered." (Emphasis supplied.) However,

> Section 19-11-12 complies with the federal mandate that requires States to put in place effective procedures whereby every three years, the State conducts a review of support orders being enforced and, if appropriate, adjusts those orders in accordance with current statutory guidelines established for the determination of appropriate child support award amounts. [Cit.]

*Kelley v. Ga. Dept. of Human Resources*, supra at 387 (3). See also 42 USC §§ 666 (a) (10) (A) (i) (I), 667 (a). In light of its state and federal statutory context and of this Court's precedent, we conclude that OCGA § 19-11-12 (e) serves a purpose similar to OCGA § 19-6-15

(d), which provides that any court applying the child support guidelines "shall not abrogate its responsibility in making the final determination of child support based on the evidence presented to it at the time of the hearing or trial."

> This provision shows that the legislature intended to prohibit a trial court's rote application of the percentage range in the guidelines by requiring the court to consider all of the evidence presented before setting the parent's final child support obligation, in order to ensure that the obligation is fair and appropriate.

*Weil v. Paseka*, 282 Ga. App. 403, 407 (1) (b) (638 SE2d 833) (2006). Like OCGA § 19-6-15 (d), OCGA § 19-11-12 (e) serves to emphasize that the qualitative determinations of

> whether special circumstances make the presumptive amount of child support excessive or inadequate and whether deviating from the presumptive amount serves the best interest of the child — are committed to the discretion of the court . . . .

*Hamlin v. Ramey*, 291 Ga. App. 222, 224-225 (1) (661 SE2d 593) (2008). Accordingly, OCGA § 19-11-12 (e) does not authorize the trial court to refrain from written findings or any other compliance with OCGA § 19-6-15.

The trial court's written order incorporated a worksheet and schedules showing that the presumptive amount of Father's child support obligation under the guidelines is $725.44, and that an upward deviation of $274.30 from the presumptive amount was appropriate due to Father's high income. The order itself also stated that there were "non-specific deviations" and that "[a]ny further modification is not in the child's best interest." However, the order failed to

> state how application of the presumptive amount of child support would be unjust or inappropriate and how the best interest of the children for whom support is being determined will be served by the deviation. OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B). In addition, the order must include a finding that states how the court's or jury's application of the child support guidelines would be unjust or inappropriate considering the relative ability of each parent to provide support. OCGA § 19-6-15 (c) (2) (E) (iii). Because the court in this case applied a [high income] deviation from the

presumptive amount of child support but failed to make all of the findings required under OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B), we reverse the trial court's final judgment and remand this case to the trial court for further proceedings consistent with this opinion.

*Turner v. Turner*, 285 Ga. 866, 867 (1) (684 SE2d 596) (2009). Compare *Rumley-Miawama v. Miawama*, 284 Ga. 811, 812 (1) (671 SE2d 827) (2009) (where trial court awards "the presumptive amount of child support without applying a discretionary deviation, OCGA § 19-6-15 does not require the court to issue findings to explain its reasoning in reaching that decision.").

*Judgment reversed and case remanded. All the Justices concur, except Hines, Melton and Nahmias, JJ., who concur specially.*

NAHMIAS, Justice, concurring specially.

I join Divisions 1 and 3 of the majority opinion, but not Division 2, because no court of competent jurisdiction has ever granted appellant Scott Spurlock's discretionary application to appeal, as is required by OCGA § 5-6-35 (f). The Court of Appeals purported to grant the application, but that was before it correctly recognized that it had no jurisdiction over this case and transferred the granted appeal to this Court. Appellee Lois Spurlock then filed a motion to dismiss, arguing that this Court had not granted the application and that it was by then untimely, but the Court denied the motion without explanation, over the dissent of Justice Melton and myself. *Spurlock v. Dept. of Human Resources*, No. S09A1475 (Nov. 16, 2009).

In the past, the Court has acted inconsistently in this situation. In several published opinions, the Court has simply decided the case without addressing the application and apparently without ever identifying this issue. But in several other cases in which the issue was identified, the Court consistently has issued unpublished orders directing that the correct procedure is to strike the transferred appeal and re-docket it as an application to be granted or denied by this Court. In both situations, we appear to have assumed, but not decided, that an application that is timely filed in the wrong appellate court remains timely after the case is transferred.

For the reasons discussed below, I conclude that only the appellate court with jurisdiction over a case has the authority to grant the discretionary application to appeal required by OCGA § 5-6-35 (f) (or the interlocutory application required by OCGA § 5-6-34 (b)), but that an application is not untimely as long as it was timely filed in the wrong court. The majority asserts that we can instead "implicitly" determine that an application "was properly

granted" by a court with no authority to do so, believing that this approach will make the appellate system move faster. See Majority Op. at 514. That approach, in my view, disregards the constitutional limits and statutory requirements that are supposed to govern the authority of judges in a democratic system of government. As demonstrated below, it is also an approach that, in fact, will cause many appeals to linger here that this Court would *not* itself grant, if we made our own decision on the application, causing the parties unnecessarily to incur additional litigation expenses. However, despite my disagreement with the majority about how these issues should be resolved, I think it is important that the Court has finally explained, in a published opinion, how we will handle this recurring procedural question, instead of leaving judges and litigants to struggle to find the answer in our inconsistent practices and orders.

1. (a) This is an appeal from an order in a "domestic relations" case. OCGA § 5-6-35 (a) (2). It therefore was required to be taken by application, "filed with the clerk of the Supreme Court or the Court of Appeals within 30 days of the entry of the order" complained of. OCGA § 5-6-35 (b), (d). As the majority correctly decides in Division 1 of its opinion, this Court, and not the Court of Appeals, has jurisdiction over appeals from child support modification proceedings arising from divorce and alimony orders. It follows that this Court, and *only* this Court, has jurisdiction to grant or deny an application for discretionary appeal from such an order. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III ("Unless otherwise provided by law, the Supreme Court shall have appellate jurisdiction of the following classes of cases: . . . (6) All divorce and alimony cases."); Art. VI, Sec. V, Par. III ("The Court of Appeals . . . shall exercise appellate . . . jurisdiction in all cases not reserved to the Supreme Court . . . .").

However, that is not what happened in this case. Appellant filed his discretionary application to appeal in the Court of Appeals. That court initially determined (or assumed) that the case fell within its jurisdiction and granted the application. A timely notice of appeal was filed, and the case was docketed in that court as a granted appeal. Six months later, the Court of Appeals realized that it had erred and that jurisdiction over the appeal properly lay in the Supreme Court. I do not fault the Court of Appeals for granting the application before recognizing that it did not have jurisdiction over the case. The same thing sometimes happens with discretionary and interlocutory applications filed in this Court, particularly where the cases involve complicated jurisdictional questions. My concern is with what happened next.

Even though the Court of Appeals recognized that it lacked jurisdiction over the case, it left in place its order granting the

discretionary application. As a result, when the matter was transferred to this Court, the Court of Appeals transferred only the granted appeal, and not the discretionary application. The case was then docketed as a *granted appeal* in this Court, even though this Court — the only Court with jurisdiction to do so — had never made a decision to grant the appeal. In my view, once it realized that it lacked jurisdiction over this case, the Court of Appeals should have vacated its prior order granting the discretionary application and transferred the application and all materials related to it, along with the appeal, to this Court. See Ga. Const. of 1983, Art. VI, Sec. I, Par. VIII ("Any court shall transfer to the appropriate court in the state any civil case in which it determines that jurisdiction or venue lies elsewhere.").[1]

The majority claims that there is no authority for the proposition that, when a case is transferred for jurisdictional reasons, "every prior decision in the case must be formally vacated so that the receiving court can determine every motion or application anew." Majority Op. at 514. It may be that some matters decided by a court without jurisdiction are irrelevant to the disposition of the case by the time the jurisdictional defect is recognized and the case is transferred. But rulings made by a court without competent jurisdiction that affect the *merits* of an appeal — including, obviously, the judgment whether even to allow the appeal of a case — are nullities, whether or not they are vacated by the issuing court. See OCGA § 17-9-4 ("The judgment of a court having no jurisdiction of the person or subject matter, or void for any other cause, is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it."). See also *Setlock v. Setlock*, 286 Ga. 384 (688 SE2d 346) (2010) (decisions by a court without jurisdiction are not res judicata). Vacating such rulings before transferring the case will make the record, and the need for an authorized decision of those issues, clearer. But if that does not happen, as I next discuss, the receiving court must nevertheless decide such matters itself, particularly where, as was done here, that defect is brought to the court's attention in a motion.

(b) Given how this case came to this Court, I believe that the appropriate procedure would have been to strike the transferred

---

[1] In general, when a court lacks jurisdiction and recognizes that fact, the only valid decision the court can make is the decision explaining that fact and dismissing the case. See *Ex parte McCardle*, 74 U. S. (7 Wall.) 506, 514 (19 LE 264) (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). The transfer provision of the Georgia Constitution, however, also grants our courts the express authority to transfer civil cases, such as this one, to the court with proper jurisdiction – but not to do anything more with the case.

520

appeal, re-docket the case as a discretionary application, and request the application and related materials from the Court of Appeals. Within 30 days of when the transfer order was filed on our docket, this Court should have made and announced our own decision whether to grant or deny the application, as our Constitution and statutes require. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (Supreme Court has appellate jurisdiction over "[a]ll divorce and alimony cases"); OCGA § 5-6-35 (a) (2) (domestic relations cases require an application for appeal), (f) ("The Supreme Court or the Court of Appeals shall issue an order granting or denying such an appeal within 30 days of the date on which the application was filed."); *Marr v. Ga. Dept. of Ed.*, 264 Ga. 841, 842 (452 SE2d 112) (1995) (construing OCGA § 5-6-35 (f) "to mean that when an application is transferred from one appellate court to the other, the 30 day time period [for the receiving court to rule on the application] is to be computed from the date of the filing in the court to which said application has been transferred."). Indeed, the need for our two appellate courts to exercise their own discretion in these matters is made explicit in the similar interlocutory appeal statute. See OCGA § 5-6-34 (b) (appeals from interlocutory orders must be taken by application and "the Supreme Court or the Court of Appeals may thereupon, in their respective discretions, permit an appeal to be taken").

The majority asserts that the Court has granted the application "implicitly" by not "dismiss[ing] the appeal as having been improvidently granted." Majority Op. at 514. The point is that we are the only appellate court that *has* jurisdiction, and we must *affirmatively* exercise our discretion to grant the application before the appeal may proceed. I do not read OCGA §§ 5-6-34 (f) and 5-6-35 (b) to allow appeals through the "implicit" grant of an application, and I am aware of no other context where the Court purports to do so, rather than by issuing an order expressly granting an application. Moreover, it is not a question of whether the Court of Appeals "improvidently" granted the application; under the law, the Court of Appeals' "grant" was a nullity.

Thus, in considering the discretionary application, we should have respectfully considered the Court of Appeals' determination that the application should be granted, just as that court may appropriately note our prior grant of an application despite having no jurisdiction to do so, but we cannot be bound by the earlier decision and instead must grant or deny the application on our own. See *Setlock*, supra; *Smith v. Dept. of Human Resources*, 226 Ga. App. 491, 495 (487 SE2d 94) (1997) ("As the Supreme Court elected to transfer the application to this court, it is appropriate that we grant the application and consider the merits of this case."). In the event

we elected to grant the discretionary application, the record need not be prepared again, as it will have been transferred from the Court of Appeals to this Court. In addition, there would be no need to file an additional notice of appeal to this Court, because there will already be a notice of appeal (albeit directed to the Court of Appeals) on file. See OCGA § 5-6-37 ("[t]he appeal shall not be dismissed nor denied consideration . . . because of a designation of the wrong appellate court" in the notice of appeal). Thus, the appellant would not be saddled with the costs of duplicating the record or paying an additional docketing fee.

(c) As far as I can tell, on every occasion where the Court has actually identified this issue — until this case — we have ordered the strike and re-docket process and then made our own decision on the application. For example, in *City of Atlanta v. E.F. Luna, LLC*, No. S09A0506 (Jan. 12, 2009), we ruled as follows:

> The Court of Appeals . . . lacked jurisdiction over the discretionary application and lacked the authority to grant the application. Accordingly, the appeal hereby is stricken from the docket and shall be re-docketed as a discretionary application. The Clerk of Court is directed to request from the Court of Appeals the prompt transmission of the discretionary application and any response thereto. Upon receipt of the application and response thereto, the Court shall make a determination whether to grant or deny the application.

Notably, we then denied the application for discretionary appeal the following month. See *City of Atlanta v. E.F. Luna, LLC*, No. S09D0692 (Feb. 11, 2009).

Similarly, in *Widner v. State Bd. of Registration for Professional Engineers & Land Surveyors*, No. S07A0556 (Jan. 22, 2007), we issued the following order:

> Appellant filed a discretionary application in the Court of Appeals . . . . The Court of Appeals granted the application . . . and Appellant timely filed a notice of appeal . . . . The Court of Appeals subsequently concluded, however, that jurisdiction rested with this Court and transferred the appeal here as it invokes this Court's constitutional question jurisdiction. . . . [A]s the Court of Appeals lacked jurisdiction over the discretionary application and consequently lacked authority to grant the application, this direct appeal hereby is stricken from the docket and the Clerk's office is

522

directed to re-docket the appeal as a discretionary application.

Again, we later denied the application for discretionary appeal. See *Widner v. State Bd. of Registration for Professional Engineers & Land Surveyors*, No. S07D0685 (Feb. 19, 2007).[2]

We followed approximately the same course in a context similar to this case (the appeal of a child support award) in *Page v. Baylard*, 281 Ga. 586 (642 SE2d 14) (2007). In the published opinion, we stated merely that "[w]e granted discretionary review" without explaining the prior history of the discretionary application. However, our prior unpublished order was explicit about the strike and re-docket procedure we followed:

> Appellant timely filed a discretionary application in the Court of Appeals . . . . The Court of Appeals granted the discretionary application . . . and . . . Appellant filed his notice of appeal. After reviewing the record and determining that jurisdiction of the appeal rested with this Court, the Court of Appeals transferred the appeal here. This Court does have jurisdiction over the appeal because it involves an award of child support pursuant to the terms of a divorce decree. Accordingly, the Clerk of Court is directed to request from the parties the prompt transmission of the discretionary application and response thereto to supplement the record previously transferred to this Court. Upon receipt of the application and response thereto, the Court shall make a determination whether to grant or deny the application.

*Page v. Baylard*, No. S06A1833 (Oct. 4, 2006).[3]

While these orders were not reported and therefore do not

---

[2] We have followed the same procedure with interlocutory applications granted by the Court of Appeals and then transferred to this Court. In *City of Conyers v. Southern Outdoor Advertising*, No. S06A1339 (May 8, 2006), we ruled:

> Because the case is within this Court's subject matter jurisdiction, the Court of Appeals lacked jurisdiction over the interlocutory application and lacked the authority to grant the application. . . . Accordingly, the appeal is hereby stricken from the docket and shall be re-docketed as an interlocutory application. The Clerk of Court is directed to request from the Court of Appeals the prompt transmission of the interlocutory application and response thereto. Upon receipt of the application and response thereto, the Court shall make a determination whether to grant or deny the application.

Once again, we ultimately denied the application for interlocutory appeal. See *City of Conyers v. Southern Outdoor Advertising*, No. S06I1492 (June 20, 2006) (denying interlocutory application).

[3] It is unclear why the Court requested the discretionary application and response from

constitute binding precedent, they reflect consistent decisions by this Court when it has actually identified and focused on the jurisdictional issue — at least before this case.[4]

(d) I acknowledge that the Court has not always followed the procedure I just described. On occasion in the past, this Court has done what it is doing in this case — simply proceed to decide a discretionary or interlocutory appeal after the Court of Appeals granted the application and then, having realized it lacked jurisdiction, transferred the granted appeal to this Court. See *Parker v. Parker*, 277 Ga. 664, 665 (594 SE2d 627) (2004) (transferred discretionary appeal); *Etheredge v. All American Hummer Limousines, Inc.*, 269 Ga. 436, 437 (498 SE2d 60) (1998) (transferred interlocutory appeal); *Kumar v. Hall*, 262 Ga. 639, 640 (423 SE2d 653) (1992) (same). However, there is no indication that the Court paid any attention to the jurisdictional issue, none of those cases discussed it, and therefore they too establish no binding precedent on the point. " 'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.' " *Albany Fed. Sav. & Loan Assn. v. Henderson*, 198 Ga. 116, 134 (31 SE2d 20) (1944) (quoting *Webster v. Fall*, 266 U. S. 507, 511 (45 SC 148, 69 LE 411) (1925)). Accord *Heard v. State*, 274 Ga. 196, 197 (552 SE2d 818) (2001) ("Because we did not rule on this Court's jurisdiction in [an earlier case], no binding precedent was established.").[5] An unexamined and unexplained practice cannot overcome the restrictions on our jurisdiction set forth in the Georgia Constitution and Code. In any event, in seeking guidance from various non-binding decisions made by this Court in the past, I would give more weight to the

the parties rather than the Court of Appeals. The better practice would be to seek the materials first from the Court of Appeals before asking the parties to incur that additional expense.

[4] In addition, as noted above, in at least one case the Court of Appeals properly made its own decision on the application after we transferred the case. *Smith*, 226 Ga. App. at 495 ("As the Supreme Court elected to transfer the application to this court, it is appropriate that *we grant the application* and consider the merits of the case." (emphasis supplied)).

[5] As noted by the majority, in *Collins v. AT&T*, 265 Ga. 37 (456 SE2d 50) (1995), this Court granted an application and then transferred the appeal, observing that "the Court of Appeals may consider the case as it would if it had granted the application." Id. That statement was made, however, without any supporting citation or explanation. Moreover, *Collins* is a very unusual case in which we announced the end of our categorical, certiorari-based assumption of jurisdiction over appeals in all state revenue cases, see generally *State v. Murray*, 286 Ga. 258 (687 SE2d 790) (2009) (Nahmias, J., dissenting), so that we actually had jurisdiction over the appeal until announcing our decision, and our ruling on the application could be construed as binding in the certiorari context. In any event, the rule should be no different for this Court than for the Court of Appeals – if we lack jurisdiction over a matter, our authority is limited to dismissing or transferring the case; any other ruling we make, including on an application for discretionary appeal, should have no binding effect on the court that actually does have jurisdiction.

524

consistent decisions we have made when actually focusing on an issue than three decisions made apparently without any awareness of it.

The majority also contends that simply proceeding with this appeal based upon the Court of Appeals' grant of the discretionary application avoids "slow[ing] down the already delayed appellate consideration of this case." Majority Op. at 515. I do not, however, accept the idea that courts can ignore the jurisdictional limits and statutory requirements that the people and the legislature have placed upon them in the name of efficiency or similar policy considerations. Moreover, the process I believe is required would not substantially delay meritorious appeals, as the statutes require us to grant or deny an application within 30 days of its filing here. What the majority's approach would do, as our past cases demonstrate, is allow many appeals (albeit not this one) that we would *not* grant, if we carefully considered and ruled on the application at the outset, to linger in the system through briefing and even oral argument, delaying resolution and adding to the parties' litigation expenses. In *Parker*, for example, having simply retained the appeal after the Court of Appeals granted the discretionary application and later transferred the case, we ultimately determined that collateral estoppel applied, thereby precluding review of the questions in which the Court of Appeals had expressed interest when it granted the application. See *Parker*, 277 Ga. at 665-666. We avoided that problem in *City of Atlanta*, *Widner*, and *City of Conyers* by following the strike and re-docket process and deciding up front to deny the application at issue.

(e) For these reasons, when the Court of Appeals grants a discretionary (or interlocutory) application and later concludes that it lacks jurisdiction, I believe that it should first vacate the order granting the application and then transfer to this Court the application and all materials related to it along with the granted appeal.[6] It is important to note that, while the majority opinion does not *require* the Court of Appeals to take this approach, the majority also does not *preclude* it, and I would strongly encourage the Court of Appeals to do so when this situation arises, for all the reasons discussed above.

In my view, if the Court of Appeals does not vacate its order granting the application, this Court should *always* strike the transferred granted appeal and re-docket it as a discretionary (or interlocutory) application, obtain the relevant materials from the Court of

---

[6] We should, of course, follow the same procedure when we have granted a discretionary or interlocutory application and later determine that jurisdiction lies in the Court of Appeals.

Appeals, and then make and announce our own decision on the application.

2. The procedure discussed above raises another jurisdictional question touched on by appellee Lois Spurlock in her motion to dismiss, which was filed after this case was transferred to this Court. Where a discretionary application is required, it must be "filed with the clerk of the Supreme Court or the Court of Appeals within 30 days of the entry of the order" complained of. OCGA § 5-6-35 (d). Appellant filed his application for discretionary appeal within 30 days of the order complained of, but it was filed in the wrong court and not docketed in this Court, directly or after the transfer, before the expiration of the statutory deadline. Our appellate courts have no jurisdiction over an untimely application. See *Wilson v. Carver*, 252 Ga. App. 174, 174 (555 SE2d 848) (2001). Accordingly, appellee contended that the appeal must be dismissed.

The Court of Appeals has rejected, however, the argument that a discretionary application that is filed timely but in the wrong appellate court, and then transferred after the 30-day deadline, must be dismissed as untimely. *Smith*, 226 Ga. App. at 495. I agree with that conclusion. OCGA § 5-6-37, which governs notices of appeal, expressly forgives such an error, stating that "[t]he appeal shall not be dismissed nor denied consideration . . . because of a designation of the wrong appellate court." Although OCGA § 5-6-35 does not include such express language, it allows for such a reading, stating in subsection (d) that "[t]he application shall be filed with the clerk of the Supreme Court *or* the Court of Appeals within 30 days" (emphasis supplied) — particularly when read in light of OCGA § 5-6-30's admonition that the Appellate Practice Act "shall be liberally construed so as to bring about a decision on the merits of every case appealed and to avoid dismissal of any case . . . , except as may be specifically referred to in this article."[7]

Moreover, this reading conforms to the constitutional provision directing Georgia courts to "transfer to the appropriate court in the state any civil case in which it determines that jurisdiction or venue lies elsewhere." Ga. Const. of 1983, Art. VI, Sec. I, Par. VIII. A contrary holding would be a trap for the unwary, and it would require even sophisticated counsel faced with one of the many jurisdictional thickets that exists under Georgia law to file applications in both appellate courts lest their jurisdictional prediction be inaccurate. See *Blackmon v. Tenet Healthsystem Spalding, Inc.*, 284 Ga. 369, 371

---

[7] The language of the interlocutory application statute is the same. See OCGA § 5-6-34 (b) ("The application shall be filed with the clerk of the Supreme Court or the Court of Appeals . . . .").

(667 SE2d 348) (2008) ("[T]he manifest purpose of Article VI, Section I, Paragraph VIII is to prevent parties from being penalized when their attorneys, or the parties themselves acting pro se, make a mistake regarding the complex, highly technical rules that govern jurisdiction and venue and inadvertently file a case in the wrong court.").

Accordingly, this Court and the Court of Appeals have routinely — and correctly, in my view — considered and decided on the merits applications that were transferred by the other appellate court more than 30 days after the entry of the trial court's order. The Court should also take this jurisdictional issue out of the shadows of undiscussed practice into the light of a published and binding opinion.

3. There is nothing that can be done at this point about this Court's failure to grant or deny appellant's discretionary application within 30 days of the case being docketed here, as OCGA § 5-6-35 (f) requires, but that error cannot be held against any of the parties. Notwithstanding that timing concern, I believe the Court should now consciously exercise its discretion and expressly grant the application, as the statute requires for this to be a viable appeal. In my view, a grant is in order, as the establishment of precedent on the jurisdictional issue presented (and now decided) in Division 1 of the majority opinion is desirable. See Supreme Court Rule 34 (2) (standard for granting discretionary applications).

The Court should then clearly announce the procedure that will apply in this situation in the future. I have explained above the procedure that I believe our Constitution and statutes require, one that has the added benefits of establishing a clear rule and resulting in a more efficient appellate system: the Court should *always* strike the appeal granted (without jurisdiction) by the Court of Appeals and then transferred to us, re-docket the case as an application, and then make our own decision whether or not to grant the application and decide the appeal.

I believe I am right on these points, but my larger objective in writing this opinion was to ensure that the Court debate and resolve these jurisdictional and procedural issues in a published opinion. Litigants in this state (not to mention the Justices of this Court and the Judges of the Court of Appeals) should not have to try to decipher, from practices not explained in our decisions or from unpublished orders, the process that will be used in this situation, which arises with some frequency. However, because I fear that the majority opinion, read in conjunction with an order issued while this case was pending, may still leave some confusion, I will conclude by stating my understanding of how the Court will now deal with this situation.

While not required to do so in *every* such case, the Court may still, in its discretion, order that the transferred granted appeal be struck and re-docketed as an application. See *Coleman v. Coleman*, No. S10A0610 (Feb. 8, 2010).[8] Alternatively, as discussed in the majority opinion, the Court may simply proceed with the appeal, "implicitly determin[ing] that the application was properly granted," with the option of dismissing the appeal as having been improvidently granted at any point. Majority Op. at 514. All of this hopefully brings more transparency to what we are doing, although I am not sure it creates more certainty about how we will proceed in any specific case.

I am authorized to state that Justice Hines and Justice Melton join in this special concurrence.

DECIDED FEBRUARY 15, 2010.

Scott E. Spurlock, *pro se.*
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Mark J. Cicero, Assistant Attorney*

---

[8] In the *Coleman* order, issued just days ago, we again unanimously said:
Because the case is within this Court's subject matter jurisdiction, the Court of Appeals lacked jurisdiction over the discretionary application and lacked the authority to grant the application. Accordingly, the appeal is hereby stricken from the docket and shall be re-docketed as a discretionary application. . . . Upon receipt of the application and response thereto, the Court shall make a determination whether to grant or deny the application.
In *Coleman v. Coleman*, Ms. Coleman filed a contempt motion against her ex-husband, seeking to enforce a temporary child support order entered by the Superior Court of Cobb County before the couple was divorced by order of a Texas court. Mr. Coleman filed a motion to dismiss on the ground of res judicata, and he raised that same defense at trial. The trial court entered separate orders, on the same day, one denying Mr. Coleman's motion to dismiss and the other finding him in contempt and directing him to be jailed until he paid $283,614.27 in child support. In an interesting move, Mr. Coleman then filed *two* applications seeking to convince one of our appellate courts to allow him to appeal *the same issue*: an application for interlocutory appeal filed in our Court on August 6, 2008, raising res judicata (and one other issue), and an application for discretionary appeal filed in the Court of Appeals on August 18, 2008, raising the same res judicata issue. On September 12, 2008, the Court of Appeals *granted* the discretionary application (A09D0007). However, on October 27, 2008, despite applying essentially the same standard, this Court *denied* the interlocutory application after "having reviewed the application on its merits" (S08I1990 (on motion for reconsideration)). More than a year later, on December 21, 2009, after recognizing its lack of jurisdiction over the Colemans' divorce and alimony case, the Court of Appeals transferred its granted appeal here (A09A1745). The appeal was scheduled for briefing and oral argument. Under the approach discussed in the majority opinion, we would have had no occasion promptly to find and consider our prior decision denying the parallel application by the same applicant arising from the same proceeding and raising the same issue, and in all likelihood we would just require the parties to fully litigate the appeal to decision. Fortunately, the Court has exercised its discretion to strike and re-docket and will now consciously and affirmatively decide whether a discretionary appeal should be granted in that case.

*General, Martin L. Fierman, John R. Sikes*, for appellees.