S10A1700. STOWELL v. HUGUENARD.
(706 SE2d 419)

CARLEY, Presiding Justice.

James Stowell and Kathleen Huguenard were divorced in 2005, and the divorce decree established child support and alimony. After experiencing a substantial change in employment, Stowell filed a motion to modify child support and alimony on August 27, 2008. After a bench trial, the trial court entered an order modifying the 2005 divorce decree by reducing Stowell's child support obligation to $981.25 per month plus an annual payment of 25% of any gross commissions or other irregular income received above his $3,500 monthly base salary. After a motion for new trial was denied, Stowell filed an application for discretionary review in the Court of Appeals, which transferred the application to this Court pursuant to our jurisdiction over divorce and alimony cases. Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (6). See also *Spurlock v. Dept. of Human Resources*, 286 Ga. 512, 513-514 (1) (690 SE2d 378) (2010). We granted the application to review certain provisions of the trial court's order modifying Stowell's child support obligation.

" 'The guidelines for computing the amount of child support are found in OCGA § 19-6-15 and must be considered by any court setting child support. (Cit.)' [Cit.]" *Roberts v. Tharp*, 286 Ga. 579, 580 (1) (690 SE2d 404) (2010). "The child support guidelines . . . shall apply as a rebuttable presumption in all legal proceedings involving the child support responsibility of a parent." OCGA § 19-6-15 (c) (1). Although this presumptive amount of child support is rebuttable, "deviations subtracted from or increased to the presumptive amount of child support [must be] . . . supported by the required findings of fact and application of the best interest of the child standard . . . [and] shall be entered on the Child Support Schedule E — Deviations." OCGA § 19-6-15 (b) (8).

According to the child support guidelines, the first step a court must take when calculating the presumptive amount of child support is to determine the monthly gross income of both parents. OCGA § 19-6-15 (b) (1). OCGA § 19-6-15 (m) (1) requires the court to use the child support worksheet, which should be attached to the final court order, to determine and calculate the presumptive amounts of child support. After determining and adjusting the gross income of each parent, the court must "compute the combined adjusted income" to use as the reference amount for locating "the amount of the basic

child support obligation" set forth in the child support obligation table. OCGA § 19-6-15 (b) (3), (4), (o). Once the basic child support obligation is determined, the court must calculate each parent's pro rata percentage of this amount to determine each parent's pro rata share of the basic child support obligation. OCGA § 19-6-15 (b) (5). The court must then find the adjusted child support obligation amount for each parent by adding to each parent's pro rata share any health insurance or work related child care costs, again assigning to each parent his or her pro rata percentage of these amounts. OCGA § 19-6-15 (b) (6). Finally, the court, using the calculated adjusted child support obligation amounts determined above, must "assign[ ] or deduct[ ] credit for actual payments for health insurance and work related child care costs." OCGA § 19-6-15 (b) (7). This final calculation will result in "the presumptive amount of child support[, which is] a sum certain single payment due to the custodial parent." OCGA § 19-6-15 (b) (7).

In the present case, the trial court attached the required child support worksheet to the modification order. It assigned a gross income per month of $3,500 to Stowell and a gross income per month of $1,912.75 to Ms. Huguenard. After adjusting Stowell's monthly income downward to $3,232.25 due to deductions for self-employment taxes, the court determined that the parties' combined monthly adjusted income was $5,145. According to the child support obligation table, the assigned basic child support obligation for a combined monthly adjusted income of $5,145 for two children is $1,308. OCGA § 19-6-15 (o). The court then divided each parent's adjusted income by the combined monthly adjusted income to find each parent's pro rata percentage and determined each parent's pro rata share of the basic child support obligation by multiplying that amount by the appropriate pro rata percentage. After adjusting for health care and work related child care expenses, the court determined that the presumptive child support amounts for Stowell and Ms. Huguenard were $981.25 and $326.75, respectively. This worksheet contains no reference to the trial court's requirement that Stowell pay 25% of any income over his base salary of $3,500 every month, and the trial court declared on the worksheet that there were no deviations to the presumptive child support amounts.

In its modification order, the trial court did include, in addition to the calculated presumptive amount of child support, a child support provision requiring Stowell to pay 25% of any monthly income earned over his base salary of $3,500 every month. However,

> [w]hen ordering a deviation from the presumptive amount of child support, the court . . . shall make written findings or special interrogatory findings that an amount of child

> support other than the amount calculated is reasonably necessary to provide for the needs of the child for whom child support is being determined and the order or special interrogatory shall [answer further specified questions].

OCGA § 19-6-15 (i) (1) (B). It is undisputed that the trial court did not articulate the required written and special interrogatory findings and

> made no provision in its Schedule E for a deviation [from the presumptive amount of child support]. Instead, the court included a provision in the final judgment [requiring an additional amount of child support]. This a court is no longer entitled to do. Under the revised guidelines, a court may only deviate from the presumptive child support amount . . . by complying with . . . OCGA § 19-6-15 (i) (1) (B). . . . Thus, . . . the court . . . was without authority to make a separate child support award . . . outside the parameters of the Child Support Worksheet. . . .

*Turner v. Turner*, 285 Ga. 866, 868 (2) (684 SE2d 596) (2009). Ms. Huguenard contends that the authority for the trial court's inclusion of this provision is found in OCGA § 19-6-15 (f) (1) (D), which states that the court may "require the parent to pay as a one-time support amount a percentage of his or her nonrecurring income." However, OCGA § 19-6-15 (f) (1) (D) is a provision to be used by the court when it is determining the gross income of each parent and does not purport to allow the court to require additional child support that is not incorporated into the child support calculations that determine the presumptive amounts of child support. Moreover, this construction of OCGA § 19-6-15 (f) (1) (D) is contrary to the intent of the General Assembly when it passed the new child support guidelines that took effect on January 1, 2007.

> "[I]nstead of calculating the child support based on the non-custodial parent's income, the new 'income shares' model is designed to have the child support divided between the parties on a pro rata basis[ ]" . . . [by requiring] a series of calculations to determine a presumptive amount of child support.

*Hamlin v. Ramey*, 291 Ga. App. 222, 223 (1) (661 SE2d 593) (2008). In effect, the trial court, by including the additional child support provision in its modification order, circumvented the guidelines' requirement that a court only may deviate from the presump-

tive amount of child support after making and applying the necessary findings of fact set forth in OCGA § 19-6-15 (i) (1) (B). Moreover, the trial court's construction is contrary to the intent of the guidelines to have each parent contribute his or her pro rata share of child support. For example, under the trial court's modification order in this case, if Stowell earns $3,000 a month more than his base salary of $3,500, then Stowell's child support amount will exceed the presumptive child support amount required by the guidelines and thus constitute a deviation without any specific written findings. The basic child support obligation for a combined monthly adjusted income of $8,145 ($6,232.25 + $1,912.75) for two children is $1,572. OCGA § 19-6-15 (o). Stowell's pro rata percentage would be 76.5%, which would make his pro rata share $1,202.58. After adjusting for work related child care and health insurance expenses, Stowell's presumptive amount of child support, according to the guidelines, should be $1,362.14. However, under the trial court's modification order, Stowell must pay the presumptive child support amount of $981.25 plus 25% of $3,000, for a total sum of $1,731.25, approximately $370 above the guidelines' presumptive child support amount for a combined monthly income of $8,145 for two children. Therefore, Stowell will be paying more than his pro rata share of child support, which, unless supported by written findings of fact, is contrary to the intent of the child support guidelines. We also note that since Stowell is required to pay 25% of any income above the base salary of $3,500, it is highly likely that Stowell will have a different child support obligation every year, which flies in the face of the requirement that the presumptive child support amount consist of "a sum certain" that may only be varied if the trial court specifically finds deviations that are supported by written findings of fact. OCGA § 19-6-15 (b) (7), (8).

Ms. Huguenard also contends that the trial court has the discretion to award the additional child support pursuant to OCGA § 19-6-15 (d), which provides that the child support guidelines are intended "to be guidelines only and any court so applying these guidelines shall not abrogate its responsibility in making the final determination of child support based on the evidence presented. . . ." However, this provision "serves to emphasize that the qualitative determinations of 'whether special circumstances [exist to] . . . deviat[e] from the presumptive amount . . . [is within] the discretion of the court. . . ." *Spurlock v. Dept. of Human Resources*, supra at 516 (3). OCGA § 19-6-15 (d) "does not authorize the trial court to refrain from written findings or any other compliance with OCGA § 19-6-15." *Spurlock v. Dept. of Human Resources*, supra.

Finally, the dissent asserts that we are elevating the child support worksheet above the plain language of OCGA § 19-6-15 (f)

(1) (D). However, the plain language of the statute explains that this provision, as stated above, is to be used by the court when calculating a parent's gross income, not the presumptive amount of child support, and "shall be entered on the Child Support Schedule A — Gross Income" section of the child support worksheet. OCGA § 19-6-15 (b) (1). This gross income amount is then used in further calculations to determine the presumptive amount of child support, and the statute explicitly states that the trial court "shall" use the child support worksheet when calculating this child support. OCGA § 19-6-15 (m) (1). Moreover, the statute requires the trial court to enter the final child support amount, which is comprised of "the presumptive amount of child support as increased or decreased by deviations," on the child support worksheet. OCGA § 19-6-15 (b) (9). Therefore, the plain language of the statute mandates that the trial court follow the child support guidelines by utilizing the child support worksheet to arrive at a presumptive amount of child support, and any amount above or below the presumptive amount of child support shall be considered a deviation. Thus, in the present case, the trial court used the child support worksheet to arrive at the presumptive child support amount for Stowell, which is $981.25 per month. The requirement that Stowell also pay a percentage of any nonrecurring income was not included in the calculation of his presumptive child support amount and results in an increase of his presumptive child support amount which, by the plain language of the statute, amounts to a deviation that must be supported by the requisite written findings of fact. OCGA § 19-6-15 (a) (10). Contrary to the assertion in the dissenting opinion, we are not holding that the trial court may never include a child support provision such as the one at issue in this case. If a trial court believes that such a provision is necessary to arrive at a fair child support amount, then it must treat it as a deviation, enter it on the Child Support Schedule E — Deviations section of the child support worksheet, and support it with "the required findings of fact and application of the best interest of the child standard." OCGA § 19-6-15 (b) (8).

In sum, the trial court's requirement that Stowell pay 25% of any income above his monthly base salary of $3,500 results in a deviation from the presumptive amount of child support set forth by the child support guidelines. Since the trial court did not support this deviation by written findings of fact and application of the best interest of the child standard, or enter the deviation on Schedule E, as required by OCGA § 19-6-15 (b) (8), it has committed reversible error. Therefore, the judgment of the trial court is vacated and the case remanded with direction that the trial court enter a new order consistent with the applicable statutory provisions as discussed above.

*Judgment vacated and case remanded with direction. All the Justices concur, except Hunstein, C. J., who dissents.*

HUNSTEIN, Chief Justice, dissenting.

Glossing over the facts and relevant law, the majority neglects to address the real issue in this case, namely, the interpretation and application of OCGA § 19-6-15 (f) (1) (D). This statute provides for the treatment of income that may vary as to amount and/or timing when calculating gross income for purposes of determining child support as follows:

> Variable income such as commissions, bonuses, overtime pay, military bonuses, and dividends shall be averaged by the court or the jury over a reasonable period of time consistent with the circumstances of the case and added to a parent's fixed salary or wages to determine gross income. When income is received on an irregular, nonrecurring, or one-time basis, the court or the jury may, but is not required to, average or prorate the income over a reasonable specified period of time *or require the parent to pay as a one-time support amount a percentage of his or her nonrecurring income*, taking into consideration the percentage of recurring income of that parent.

(Emphasis supplied.) Id. Because the provision of the modification order at issue, which awards child support based on a percentage of commissions received in addition to Stowell's monthly recurring obligation, is in accordance with the option to order a "one-time support amount" specifically provided for in the language of OCGA § 19-6-15 (f) (1) (D), I must dissent.

The facts of this case illustrate how, in enacting OCGA § 19-6-15 (f) (1) (D), the Legislature reasonably determined that under certain circumstances it is appropriate to order a "one-time support amount" representing a percentage of variable income received during a defined period, e.g., an annual payment. At the time of the parties' 2005 divorce, Stowell had historically earned a significant portion of his income through commissions or other irregular payments. After he suffered a loss of employment in 2008, he obtained consulting work that paid $3,500 per month plus sales commissions. Although Stowell testified at the May 2009 bench trial on his modification petition that he had received no commission income during approximately four months in his then-current consulting position, the record established that he was eligible to earn such commissions, which would be paid as the employer is paid for business secured by Stowell. In making its oral ruling, the trial court

stated that it was "concerned about a lot of these jobs where bonuses may or may not come. And in this economy, a lot of people who have historically gotten huge bonuses aren't getting them." Thus, utilizing the plain language of OCGA § 19-6-15 (f) (1) (D), the trial court provided for the possibility of Stowell receiving commission income, see *Evans v. Evans*, 285 Ga. 319 (676 SE2d 180) (2009) (trial court must consider variable income, even if not guaranteed), without averaging commissions previously received under entirely different employment circumstances. See OCGA § 19-6-15 (f) (1) (D) (irregularly received or nonrecurring variable income may be averaged over reasonable period and added to fixed salary to determine gross income).

In concluding that the trial court committed reversible error because the award at issue is an unsupported deviation, the majority recites the procedure for completing a child support worksheet and then reasons, in essence, that any item not included on that worksheet constitutes a deviation. Op. at. 629. However, this approach elevates a worksheet promulgated by the Georgia Child Support Commission, see OCGA § 19-6-15 (m) (2), above the plain language of the statute itself. To simply ignore OCGA § 19-6-15 (f) (1) (D) would violate the fundamental principles of statutory construction. See *Handel v. Powell*, 284 Ga. 550, 554-555 (670 SE2d 62) (2008) (statute must be construed to give sensible and intelligent effect to all of its provisions and to refrain from an interpretation that renders any part meaningless). And if, as the majority posits, construing this statute in a manner that would uphold the award at issue is contrary to the legislative intent in enacting the child support guidelines, op. at. 630, it is unclear what the correct interpretation of "requir[ing] the parent to pay as a one-time support amount a percentage of his or her nonrecurring income" could be. Even if the award at issue had been referenced somehow as a deviation on Schedule E, the majority sheds no light on how a deviation that is undetermined as to amount and timing could possibly be incorporated into the mathematical calculation of Stowell's monthly recurring child support obligation. This is, of course, because it cannot be done. A statute must not be interpreted in a manner that leads to an absurd result, see *Haugen v. Henry County*, 277 Ga. 743 (2) (594 SE2d 324) (2004), and when a practical, workable method for dealing with situations such as that presented here is authorized by the plain language of the statute, there is no reason to hold otherwise.

DECIDED FEBRUARY 28, 2011.

*Gibson, Deal, Fletcher & Dunham, William A. Fletcher, Jr.*, for appellant.

*David S. Walker, Jr.*, for appellee.